## August Loettker, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 14,548.

1. VERDICTS—*when set aside as against the evidence.* While it is true that primarily the jury are the judges of the probative force of the evidence and their finding is not to be lightly disturbed, yet when the Appellate Court upon a review of the record is of the opinion that the verdict is clearly contrary to the manifest weight of the evidence, it becomes its duty to reverse a judgment resting upon such unsupported and unwarranted verdict.

2. ORDINARY CARE—*extent of requirements of.* In a place of danger the law requires care commensurate with and to be measured by the dangers apparent and obvious, and especially is this rule strict where such dangers are as a matter of fact known to the complaining party. The greater the danger, the higher the care and caution which should be exercised to avoid it.

3. CONTRIBUTORY NEGLIGENCE—*when policeman injured at street crossing guilty of.* A policeman assigned to duty at a street crossing to regulate traffic cannot recover for an injury resulting from a street car at such crossing of the approach of which it was his duty to know.

BROWN, J., dissenting.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the March term, 1908. Reversed with finding of fact. Opinion filed June 8, 1909.

**Statement by the Court.** This is an appeal from the judgment of the Circuit Court, rendered upon the verdict of a jury in favor of plaintiff, for $1,750. The action is for personal injuries. The cause went to the

jury upon the first count only of the declaration, which charges that it was the duty of defendant to sound a gong or ring a bell before crossing Madison street; that defendant, on the occasion in question, neglected to do so, and such neglect of duty resulted in a car of defendant's running into plaintiff, who was lawfully upon the north cross walk at the intersection of Madison and Clark streets, while said car was proceeding to cross Madison street to the south on Clark street, whereby plaintiff was injured, etc.

The testimony of plaintiff is to the effect that on the 9th day of October, 1903, the day of the accident, he was a Chicago policeman, stationed for duty on the north crossing of Clark street where it intersects Madison street; that his duty was to regulate the traffic at that point; that electrically propelled cars run along tracks of defendant company going north and south along Clark street, and that cable cars run east and west along Madison street at this point; that the time of the accident was about 8:45 or 8:50 in the morning, and that just before the accident plaintiff was on the north cross walk, facing south, between the two tracks; that a car was approaching from the south; that he assisted two women and a couple of children to cross the tracks safely to the east; that in so doing he passed to the east track and then stepped backwards towards the west track, when the car in question, which had stopped at the crossing as required by the rules and regulations of defendant and the ordinances of the city, started up and struck him from behind; that the force of the car striking him felled him to the ground; that he fell on his face, so that his body lay across the track, although he testified, on cross-examination, that he did not fall to the ground; that he caught himself with his hands, fell down on his hands and knees and got "right up" after the colliding car passed by him; that he did not look to the north; that he did not know that the car was on the crossing, and that he did not hear a sound or

warning of any kind; that generally he did not look north, but kept his face toward the south; that the crossing was a busy one, and that at the time of day when the accident occurred, cars went back and forth every half minute or minute for several hours. For some time after the accident plaintiff continued to perform his duties on the crossing, and then went to his home and received medical attention. The object- ive symptoms resulting from his fall consisted of bruises. No bones were broken. He returned to his duties in seventeen days, and thereafter was a police- man for 38 months, when he was retired upon pension for physical disabilities, on his own application. Dur- ing the 38 months he performed his duties about as continuously as during the former years of his service. On Christmas eve 1905, while endeavoring to place some young hoodlums under arrest for disturbing the peace, he was assaulted by them and knocked down. He was severely injured, and while down, some of his assailants said, "He is all in, like Fitzsimmons; let him die." He was taken to the Emergency Hospital in a patrol wagon, where he received surgical relief. Among other things there done for him was the sew- ing up, with several surgical stitches, of a cut in his chin. He was then taken to his home in a patrol wa- gon and stayed there some ten or eleven days. On another occasion, between October 24 and 25, 1906, he fell down stairs at his home and sprained both of his ankles. He was a man of moderate drinking habit, consuming beer and sometimes alcoholic drinks daily, but never, so he says, to a state of intoxication. An eye witness of the accident, and the only one produced for plaintiff, examined in support of plaintiff's con- tentions, testified that the car which struck plaintiff was, at the time it struck him, going about as fast as a man could walk, or a little faster; that it came from the north and pushed plaintiff from behind about three or four feet, and did not "take him off his feet;" he did not notice the car before it struck plaintiff and was rot sure whether he heard a bell ring or not. The

conductor and the motorman of the car gave their version of the occurrence as witnesses for defendant, the conductor testifying that the car came to a stop on the north Clark street crossing a few seconds and then started up and ran about three feet slowly and then stopped suddenly. He got off the car and spoke to plaintiff, asking him if he was hurt, and he answered that he was all right. The motorman testified that he stopped his car on the north crossing; that he saw plaintiff escort some women and children across the tracks to the east; that thinking, from the movements of plaintiff, that he intended to proceed across the east tracks, he, after receiving the starting signal from the conductor, rang his bell and started the car slowly, when plaintiff unexpectedly backed up, and when he had run his car about two feet, it "bumped the policeman," meaning plaintiff; that plaintiff was jarred by the bump, "but not knocked off his feet;" that after the car struck plaintiff it went less than one foot before he again stopped it; that it was customary for cars to proceed without signal from the crossing policeman, unless signaled to stop by that officer; that when the car finally proceeded, plaintiff was still on the crossing, although on the return trip he had left his post.

At the conclusion of the plaintiff's direct proof, and again at the close of all the proofs, defendant moved the court in writing to instruct a verdict in its favor, and tendered on each occasion a written instruction to be given to the jury to so find. To the action of the court in refusing to so instruct the jury, defendant objected and preserved sufficient exceptions to such action of the court to avail of them here for reversal.

Defendant's main argument for reversal of the judgment is grounded on the contention that the verdict is manifestly contrary to the weight of the evidence, on erroneous rulings of the trial judge in the admission and exclusion of evidence, in giving instruction 4, and in modifying instruction 19 and not giving it as requested.

WEST, ECKHART & TAYLOR, for appellant.

FRANCIS X. BUSCH, FRANK A. ROCKHOLD and ALBERT J. W. APPELL, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

An examination of the whole evidence impels us to the conviction that it is insufficient to support the judgment. While it is true that primarily the jury are the judges of the probative force of the evidence and their finding is not to be lightly disturbed, yet when this court, upon a review of the record, is of the opinion that the verdict is clearly contrary to the manifest weight of the evidence, it becomes its duty to reverse a judgment resting upon such unsupported and unwarranted verdict. This duty is imposed by the statutes of this state. As said by the court in C. & E. I. R. R. v. O'Connor, 119 Ill. 586: "where there was evidence before the jury tending—how much is immaterial—to establish negligence, * * * the question of the weight of it and of the reasonableness of the amount of damages belongs purely to the Appellate Court." In Gehm v. The People, 87 Ill. App. 158, the court says: "The question whether the evidence is sufficient to support the verdict is open to determination in this court; and while we must give due weight to the superior facilities possessed by the jury for determining the truth by seeing the manner of the witnesses upon the stand, yet that consideration is not conclusive upon us that their verdict is just." The Supreme Court said in a chancery case, on questions of fact: "When, as in the case at bar, the record shows that the verdict is against the clear weight and preponderance of the evidence, it will be set aside, as in cases of law," vide Bradley v. Palmer, 193 Ill. 15; I. C. R. R. v. Cunningham, 102 Ill. App. 206; C. & E. R. R. v. Meech, 163 Ill. 305; B. H. & C. M. Co. v. Bennett, 96 Ill. App. 514. As was said in Borg v. C. R. I. & P. Ry., 162 Ill. 348: "It is plain that the

statute is designed to confer upon the Appellate Court more extended powers than are possessed by the judge of the trial court.''

With these principles of the law in mind, we will devote our attention to a review of some of the salient features appearing from the evidence. In the first place, plaintiff's position on the cross-walk was one fraught with constant peril and required, yea, demanded, at his hands the greatest vigilance and care not only for his own safety, but for the safety and order of the vehicular and foot traffic which continually congregated around him at his place of duty to the point of congestion. While discharging the duties committed to him, and with the knowledge that a car was passing over his crossing about every half minute, he says he was unaware of the presence of the car which struck him, and, without looking to the north, from whence cars of the defendant company were constantly streaming to the south, he walked backwards into the path of the car and was struck by it. That he backed up to the car after escorting the ladies and children across the car tracks to the east, there is no countervailing proof. It will not do for plaintiff to say that he was not required to look to the north, but only to face to the south, in the light of the fact that he was there on the north crossing to regulate all the street traffic coming south down Clark street north of Madison street, for he admits in his testimony that traffic so coming was halted by a signal given by him with his club or his hand. In such a place of danger, the law requires care commensurate with, and to be measured by, the dangers apparent and obvious, and especially is this rule strict where such dangers are, as a matter of fact, known to the complaining party. The greater the danger, the higher the care and caution which should be exercised to avoid it. Austin, Admr., v. C. R. I. & P. Ry., 91 Ill. 35.

We are not able to understand why plaintiff, irrespective of the fact as to whether the bell was rung, did

not hear the rumble of the car (which it is conceded was a "big red car") as it approached the crossing; for it is a matter of common knowledge and daily observation that such cars make much noise. In the exercise of due care he certainly would have heard the car as it approached the crossing. The contention that plaintiff was absolutely unaware of the presence of the car upon his crossing, coupled with the undeniable fact that he blindly backed into the path of cars constantly moving, and conceding, as is abundantly proven, that the car was proceeding at a speed no faster than the walk of an ordinary man, and that it had come to a dead stop at the crossing before starting and had not gone more than two or three feet before it came in contact with plaintiff and was stopped within about a foot from the place of such contact, we think sufficient to charge plaintiff with negligence which was the primary cause of his collision with the car. It seems more like a case of plaintiff backing into the car, than the car running against plaintiff. Again, plaintiff's evidence is unreliable on two very material matters. He at first testifies that the force of the impact knocked him down, so that he fell upon his face. This he virtually admits is untrue when, on cross-examination, he says that he caught himself on his hands and knees and "got right up." On this point his supporting witness swears that the striking of the car did not "take him off his feet," and the motorman of the colliding car testifies that plaintiff was bumped by the car and pushed along by the car, but that he was not knocked off his feet.

That plaintiff resumed his duties at once after the accident, and that he did not leave his post for some time after that morning is admitted. The only injury to plaintiff observable was some bruises on his body, for which he was at first treated by simple remedies by his medical attendant. Seventeen days after the accident he returned to his police duties and so continued for three years and two months, without any more interruption of service than had been his habit

during a like previous period of time. During this time he was maltreated by "hoodlums," necessitating his removal to a hospital in a patrol wagon, where he was treated surgically, a cut in his chin being sewn up, and while the hospital authorities thought it proper to retain him, he was, at his own instance, taken to his home in a patrol wagon, where he says he remained off duty for ten or eleven days. He subsequently met with a mishap in falling down stairs and spraining both of his ankles. He was placed upon the pension roll and retired from active service 38 months after the accident in question, at his own request, and charges all his physical ills to his contact with the car. We are unable to reconcile such claim, in the light of the other accidents which plaintiff admits subsequently befell him, and the medical testimony. It is not contended that any ordinance of the city required the ringing of a bell before starting the car, although negligence is charged in failing to ring a bell, upon the theory that at such a busy place prudence and due care required the bell to be sounded to warn pedestrians of the car's approach. If it were conceded that not ringing the bell was negligence, still we are confronted with inadequate proof to sustain such contention. Plaintiff was oblivious to all sounds, is the logical conclusion to be drawn from his testimony. His only witness on this point is uncertain, testifying "I am not sure whether I heard the bell ring or not." The motorman swears positively that he did ring the bell. Can it be said, in this state of the record, that plaintiff on this crucial point has sustained his contention by a preponderance of the evidence? We think not. Plaintiff did not know the car was on the crossing, but it was, as he at once discovered to his sorrow. He was equally without knowledge of the ringing of the bell. Can his ignorance of the ringing of the bell be taken as evidence that the bell did not ring, any more than his lack of knowledge of the presence of the car can be taken as evidence that the car was not there? The contention of plaintiff, in view of the undeniable

facts, borders on the absurd. What strength does the testimony of plaintiff's witness, that he was not sure whether he heard the bell ring or not, lend to plaintiff's contention that the bell was not rung? Is not such testimony entirely overcome when the man who rang the bell comes upon the witness stand and affirmatively and unequivocally swears he did ring the bell when he started his car which came into collision with plaintiff? We cannot hold that the failure to ring the bell, if such failure constituted negligence, is sustained by the greater weight of the evidence, but, on the contrary, that plaintiff has failed to make such proof by a preponderance of the evidence.

We are of the opinion that the duties of plaintiff at the crossing not only required him to protect himself in the regulation of the traffic which he was stationed there to control, but also to protect pedestrians passing over that crossing, and that such duties required him to keep watch for and to know of the approach of cars. This follows as a natural consequence of his admitted duties; for otherwise, how could he protect others from the danger of coming in contact with approaching cars unless he kept himself informed of their approach? In walking backwards into the path of cars, in such a manner as to be struck by a car, without knowledge of its approach, is evidence of such a lack of care for plaintiff's safety as to preclude a recovery.

It is, we think, apparent that the duties of plaintiff were analogous to those of flagmen stationed at railroad crossings, and that the decisions of our courts in such cases are, by like analogy, controlling authority. It has been held that a flagman stationed at a crossing to look out for trains and give warning of their approach, if run over by a train, cannot recover. 2nd Beach on Contributory Negligence, sec. 190; Clark v. B. & A. R. R., 128 Mass. 4. The Supreme Court of Alabama in L. & N. R. R. v. Crawford, 8 So. Rep. 243, after stating the duty required of travellers, say: "By how much stronger reason should it be exacted of a

watchman whose special office requires him to watch and give warning to others of approaching dangers." In Clark v. B. & A. R. R., *supra*, the court in ruling in the case of a flagman who was run down by cars detached from an engine, which he did not see approaching, made these observations: "He simply failed to see what it was his duty to see, and failed to give the notice he was there to give." So with plaintiff; he failed to see the car which he was there to see, and which, had he seen, its further movements after stopping on the crossing were within his control. In C. R. I. & P. Ry. v. Clough, 33 Ill. App. 129, this court said, in an opinion voiced by the late Judge Gary: "That the flagman well knew the train was coming may well be presumed. No direct statement that he knew the fact which it was his duty to know was necessary to justify the finding that he did know it." A person employed in surroundings of the character which confronted plaintiff at his post of duty is presumed to understand the nature and dangers of his employment when he accepts it by entering upon the discharge of its duties, and to assume all the ordinary hazards of the service. C. R. I. & P. Ry. v. Clark, 108 Ill. 113.

Plaintiff not only failed to sustain his charge of negligence, but had he done so, would not have been entitled to recover. His own evidence proves that he was guilty of such contributory negligence as inhibits a recovery. Furthermore, the accident was one of the risks of his employment, and the verdict is manifestly contrary to the probative force of the evidence. We do not regard it as essential to our decision to refer to other points argued, although we fail to discover any infirmity in the instructions complained about for the reasons urged.

Being of the opinion, from the evidence in the record, that the plaintiff is not entitled to recover on the case made by his declaration, the judgment of the Circuit Court is reversed, with a finding of fact.

*Reversed, with finding of fact.*

Mr. Justice Brown dissenting.