JACOB STURM, Defendant in Error, *vs.* THE CONSOLIDATED
COAL COMPANY, Plaintiff in Error.

*Opinion filed December 21, 1910.*

1. NEGLIGENCE—*questions of contributory negligence and assumed risk are ones of fact if evidence is conflicting.* The questions of contributory negligence and assumed risk are questions of fact where the evidence is conflicting or reasonable minds may legitimately draw different conclusions from the undisputed facts established by the evidence, and in such cases the Supreme Court cannot determine such questions as matters of law.

2. MASTER AND SERVANT—*a servant does not assume risks of which he had no knowledge.* A servant assumes all the ordinary risks which are incident to the employment in which he is engaged, but he does not assume extraordinary risks and such risks as he had no knowledge of, and no opportunity, by reason of such want of knowledge, to guard against.

3. SAME—*right of a servant to rely upon long established custom.* Where a long established custom exists in, a mine that when the cable which runs upon the tracks in the mine has been stopped it will not be started for at least ten minutes, a servant employed to grease the cable rollers and keep them in repair, and who has knowledge of such custom, has a right, in performing his duties, to rely upon the observance of such custom, in the absence of any notice or warning that the cable will be started before the customary time has elapsed.

4. SAME—*master is bound to know of custom of long standing.* Where 'a custom in the matter of operating a cable in a mine is shown to have existed for many years the mine owner is presumed to have knowledge thereof, and proof of express notice to him is not essential in order for him to be bound by such custom.

5. SAME—*what servants in a mine are not, as a matter of law, fellow-servants.* A servant employed in a mine to grease and keep in repair the rollers carrying the cable operating the cars on the tracks is not, as a matter of law, a fellow-servant of the cager, who works at the bottom of the mine, and the engineer who runs an engine on the surface of the ground near the top of the shaft, which furnishes the power for operating the cable.

6. EVIDENCE—*when proof of a custom is competent though not alleged in the declaration.* In an action for damages for injuries to a servant caused by the sudden starting of a cable near which he had been and was then working, proof that the cable was started in violation of a long established custom in the mine for

the cable to remain stationary for at least ten minutes after it had been stoppped bears directly upon the questions of the servant's contributory negligence and assumption of risk, and is admissible though no such custom was averred in the declaration.

7. SAME—*plaintiff may prove that he has incurred bills after beginning suit, in attempting to be cured.* If the plaintiff has not recovered from his injuries at the time he brings his suit, it is not error to allow him to prove that he has incurred doctor's bills and drug bills after the commencement of the suit in attempting to be cured, even though the physician and druggist who testified to the amount of their bills failed to state how their bills should be divided with reference to the time the suit was begun.

8. INSTRUCTIONS—*when instruction upon fellow-servant question is properly refused.* An instruction in a personal injury suit by a servant is properly refused where it ignores the doctrine applicable to the facts proven, that if a servant is injured by the combined negligence of other servants, some of whom are not fellow-servants of the plaintiff, the master cannot escape liability because a fellow-servant's negligence contributed to the injury.

9. Under the proven facts in this case it was for the jury to determine whether the plaintiff was standing astride of the cable which injured him or was standing upon the outside of the curve in the track when the cable started, and whether his action in assuming the position he was in at the time of his injury was such negligence as barred his right to recover.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macoupin county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

BROWN, WHEELER, BROWN & HAY, and J. T. CREIGHTON, (MASTIN & SHERLOCK, of counsel,) for plaintiff in error.

EDWARD C. KNOTTS, and PEEBLES & PEEBLES, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case commenced by the defendant in error in the circuit court of Macoupin county, against the plaintiff in error, to recover damages for a per-

sonal injury alleged to have been sustained by the defendant in error while in the employ of the plaintiff in error. The jury returned a verdict in favor of the defendant in error for the sum of $5000, upon which verdict the circuit court rendered judgment for $2500 after requiring a *remittitur* by the defendant in error of $2500, which judgment was affirmed by the Appellate Court for the Third District, and the record has been brought into this court for further review by writ of *certiorari*.

This case was submitted to the jury upon a declaration containing five counts, which charged common law negligence. The first, second and third counts of the declaration charged, in substance, that the plaintiff in error was engaged in operating a coal mine; that cars were hauled in the mine over a track laid in the entryways of the mine by means of a wire cable which ran over certain rollers; that there were curves in the track, at which points there were placed rollers, called "crowd-rollers," to keep the cable in place; that at one curve in the track the crowd-rollers were out of repair; that the plaintiff in error knew of the defective condition of the crowd-rollers at said point, and the defendant in error, in consequence of the negligence of the plaintiff in error in permitting said crowd-rollers to be out of repair, while in the exercise of due care for his own safety, was injured. The fifth and sixth counts of the declaration (the fourth count having been taken from the jury) charged, in substance, that defendant in error was assisting to replace the cable, by means of which cars were propelled in the mine, upon the crowd-rollers in which it ran and from which it had slipped at a curve in the track in the mine; that while defendant in error was engaged in such work the cable was stationary, and that it was the duty of the plaintiff in error, while the defendant in error was at work in close proximity to the said cable, not to start said cable but permit it to remain stationary; that the plaintiff in error, while the defendant

in error was standing near said cable and engaged in removing a pin from a tie, without warning to the defendant in error caused the said cable to be suddenly and violently set in motion, by means of which said cable was thrown off of the crowd-rollers at that point and the person of defendant in error was caught by said cable, and, being unable to extricate himself therefrom, he was severely injured.

At the close of the defendant in error's case, and again at the close of all the evidence, the plaintiff in error moved the court for a directed verdict, which motion was overruled, and the action of the court in overruling said motion has been assigned as error.

The evidence fairly tends to show that the defendant in error, who was an experienced workman, had been in the employ of the plaintiff in error in its coal mine for a number of years; that the cars used in hauling coal were propelled to and from the bottom of the shaft by a cable, which was operated by a steam engine situated upon the surface of the ground near the mouth of the shaft; that the cable was made of twisted wires, was three miles in length and was laid in the mine in the form of a loop; that the cable ran upon horizontal rollers fastened in the center of the track, about thirty feet apart, except at points where the track curved, at which curves the rollers were placed in a position perpendicular to the track and ran upon pins driven into the ties upon which the rails forming the track rested, which perpendicular rollers were called crowd-rollers; that it was the duty of defendant in error to grease said rollers and keep them in repair; that at the curve where defendant in error was injured there were placed fourteen crowd-rollers, only six of which, at the time defendant in error was injured, were in repair, the others being worn and broken; that on the occasion of the injury to the defendant in error the cable had slipped from the rollers at the curve where said crowd-rollers were defective, and the defendant in error, the pit-boss of the plaintiff

in error and three gripmen went to that point to replace the cable upon the crowd-rollers; that the engine which furnished the power that propelled the cable was stopped by the engineer, the cable was slacked and was then replaced upon the crowd-rollers by the defendant in error and the other workmen, and then the defendant in error attempted to remove a pin from which a crowd-roller had been broken, to prevent it from injuring the cable; that while he was engaged in removing the said pin from the tie into which it,had been driven, the cable was suddenly started without notice to defendant in error, and it thereupon slipped from the crowd-rollers and he was caught by the cable and drawn along with the cable and thrown against the rib-side of the entry, and before he was able to extricate himself he was severely and permanently injured.

It is first contended that the court erred in declining to take the case from the jury on the ground that the defendant in error was guilty of such contributory negligence at the time he was injured as to defeat his right to recover. It is undisputed that the defendant in error was an experienced workman and familiar with every detail of the work in which he was engaged at' the time he was injured, and that he fully realized that if he was inside of the curve and in close proximity to the cable while it was in motion, and it slipped from the crowd-rollers, he was in a place of the most imminent danger. At the time the defendant in error was injured the cable started suddenly and violently without notice to the defendant in error, and he was injured so suddenly that neither he nor any one of the other workmen who were present and who testified upon the trial was able to state just how the accident occurred. After the defendant was extricated it was found that the principal injury which he had sustained was on the inside of his left leg, a hole having been worn in the inside of that leg, which showed that the cable had rubbed the leg at that point, and the plaintiff in error bases upon that fact,—that

is, the character of the injury,—an argument that the defendant in error must have been standing astride the cable at the time it started, and it is urged that for an experienced workman to have assumed so dangerous a position with reference to the cable, although it was stationary at that time, was such a negligent act on his part as to bar a recovery in case the cable was suddenly started and without notice to him.  The defendant in error testified that at the time he was working upon the defective pin, with the view of removing it from the tie, he was not standing astride of the cable but was standing upon the outside of the curve, and that the cable was between his person and the pin.  None of the other workmen who were present observed the precise situation of the defendant in error's person at the time the cable started.  It may be also observed that even if the defendant in error was standing astride the cable while at work, he would not have been injured if the cable had remained stationary.  We are unable to say, as a matter of law, that the testimony of the defendant in error that he was standing on the outside of the curve and beyond the cable at the time it started is so inconsistent with the other facts proven in the case that his testimony upon that question can be rightfully disregarded, but in view of all the proven facts we are of the opinion the questions whether the defendant in error was standing astride the cable or upon the outside of the curve when the cable started, or what position his person was in when the cable was started, and whether the position which he had assumed when the cable started was so negligent as to bar a recovery, were questions for the jury.

It is further urged that the case should have been taken from the jury on the ground that the defendant in error assumed the risk of being injured in the manner in which he was injured, and that by reason of the assumption of risk there can be no recovery on behalf of the defendant in error for the injury which he sustained.  It is true that

a servant assumes all the ordinary risks which are incident to the employment in which he is engaged, but a servant does not assume extraordinary risks and such risks as he has no knowledge of, and, by reason of the want of such knowledge, no opportunity to guard against. The evidence shows that the cable used to propel the cars in said mine was three miles long; that it was operated by an engine on the surface of the ground near the mouth of the shaft, and that signals to start and stop the cable were communicated by the cager from the bottom of the mine to the engineer at the top of the mine by a bell or by writing instructions upon the sides of the cars which were being hoisted, and that there was no way of communicating with the engineer except by going to the bottom of the shaft and first communicating with the cager, and the uncontradicted evidence showed that a custom had prevailed in the mine of the plaintiff in error for a number of years that when the cable had stopped it should remain stationary for ten minutes and that it should not be started before the lapse of that length of time, and the evidence in this case tended to show that the cable had not been stationary more than half of that time,—that is, for a period of five minutes from the time it was stopped until it was again started and the defendant in error injured. The defendant in error had notice of this custom in this mine, and the point where the cable slipped from the crowd-rollers and where he was at work was one-half mile from the bottom of the shaft, and he had no way of notifying the engineer that the repairs at the point where he was injured had not been completed and not to start the cable until they were completed, except by going or sending a man to the bottom of the shaft. We are of the opinion that in making such repairs the defendant in error, in view of the custom prevailing in plaintiff in error's mine, had a right to rely upon that custom and to assume that the cable would not be started until after ten minutes had elapsed from the time it

was first stopped and to proceed during that time with his work, and that if the cable was started within that period and he was injured by reason of the starting of the cable within that time, he had the right to have submitted to the jury the question whether or not he had assumed the risk of being injured by reason of the cable being started, without warning to him, during the period while he was engaged in making the repairs at the time he was injured. The questions of contributory negligence and assumed risk are questions of fact, and where the evidence is conflicting or where reasonable minds may legitimately draw different conclusions from the undisputed facts established by the evidence, this court cannot hold, as a question of law, that a defendant in error was guilty of contributory negligence or that he assumed the risk which caused his injury. In view of the evidence as disclosed by this record we are of the opinion the court properly submitted the questions of contributory negligence and assumed risk to the jury.

It is further contended that the relation of fellow-servants existed between the defendant in error and the gripman, the cager at the foot of the shaft who gave the signal to start the cable, and the engineer on the surface of the ground at the mouth of the shaft who started the engine which set in motion the cable, and for that reason the defendant in error cannot recover. The defendant in error was engaged in greasing the rollers upon which the cable ran and in keeping said rollers in repair; the gripman was engaged in hauling cars by attaching them to the cable by an appliance attached to the car; the cager was engaged at the bottom of the shaft in assisting to elevate the cars to the surface of the ground, and the engineer ran the engine on the surface near the mouth of the shaft which elevated and lowered the cars, and also operated another engine which furnished the power which operated the cable. It is apparent that it required the concurrent action of these several workmen to start the cable, and we think that they

were so situated that all reasonable minds would not agree that they were, within the meaning of the law, fellow-servants, but think the question whether they were fellow-servants was properly left by the court to the jury. Especially was this true as to the relation existing between defendant in error, the cager and the engineer. In *Norton Bros.* v. *Nadebok,* 190 Ill. 595, it was said (p. 599): "As a general rule, the question whether servants of the same master are fellow-servants is a question of fact to be determined by the jury from all the circumstances of each case. (*Lake Erie and Western Railroad Co.* v. *Middleton,* 142 Ill. 550; *Louisville, Evansville and St. Louis Railroad Co.* v. *Hawthorn,* 147 id. 226; *Mobile and Ohio Railroad Co.* v. *Massey,* 152 id. 144; *Chicago and Alton Railroad Co.* v. *House,* 172 id. 601; *Chicago and Alton Railroad Co.* v. *Swan,* 176 id. 424.) If, however, the facts are conceded or there is no dispute with reference thereto, and all reasonable men will agree, from the evidence and the legitimate conclusions to be drawn therefrom, that the relation of fellow-servants exists, then the question becomes one of law and not of fact.—*Chicago and Eastern Illinois Railroad Co.* v. *Driscoll,* 176 Ill. 330." What is stated in that case we think applies with equal force to this case.

It is also urged that the court erred in admitting proof that there was a custom in force in the mine of the plaintiff in error not to start the cable for ten minutes after it had been stopped, as no such custom was averred to exist in the declaration. We do not think the court committed error in admitting this proof, as the evidence bore directly upon the question whether defendant in error was guilty of contributory negligence or whether he assumed the risk of being injured in the manner in which he was injured. In *North Chicago Street Railroad Co.* v. *Irwin,* 202 Ill. 345, it was said in disposing of a similar question (p. 347): "There was no allegation in the declaration that propelling the car northward upon the westerly or south-bound track

was an act of negligence, still the court did not err in permitting appellee to prove the existence of the custom of running all north-bound cars on the east track and all south-bound cars on the west track.  The existence of this custom entered into the consideration of the question whether the motorman was in the exercise of ordinary care in propelling the car northwards on the west track at such a rate of speed as twelve or fifteen miles per hour, and also bore upon the question of the carefulness or negligence of the deceased in leaving the space between the tracks and going upon the west track in order to be out of danger from a car moving northward."

It is further urged that the court committed error in admitting proof of the fact that the defendant in error had incurred doctor bills and drug bills in attempting to be cured since the date of the commencement of this suit.  In the course of the trial the defendant in error made proof that he had employed physicians to treat him and that he had purchased medicines which he had taken, but the physicians and druggist by whom he made such proof, while they fixed the amounts of their respective bills, did not discriminate between the value of their services or the amount of drugs furnished the defendant in error before and subsequent to the date of the commencement of this suit.  In this we think no reversible error was committed.  The defendant in error must recover in this suit for all damages he has sustained in consequence of his injury, which would include his doctor bills and the amounts paid out by him for medicine, and the fact that he had not been fully healed at the time he brought his suit would not bar him from having a physician to treat him, or from purchasing medicine to cure him, or from making proof of the value of such medical services or the amount expended for medicine purchased subsequent to the date of the commencement of this suit.  The question here raised has been determined by this court, in principle, adversely to the contention of the

plaintiff in error in *Chicago City Railway Co.* v. *Henry,* 218 Ill. 92, where, on page 95, it was said: "He [the plaintiff] must exercise reasonable care to effect a cure and mitigate the effect of the wrongful act and is entitled to recover all legitimate expenses incurred for that purpose, and if it is proved that further expenses for a surgical operation or medical treatment or attendance will necessarily be required the jury may take that fact into account. It was competent for the plaintiff to show, by evidence, the value of the expenses which he had incurred for medical and surgical services, and if he would be subject to like expenses in the future it would be competent to prove the fact." In the case at bar the evidence went further than the rule announced in the *Henry case.* In that case the evidence would have been largely speculative, while in the case at bar the facts that medical services had been furnished and medicine had been purchased, and the value thereof, were definitely proven.

It is also urged that the court committed reversible error in giving and refusing instructions. It is claimed that the court erred in giving defendant in error's fifth instruction. That instruction informed the jury that if the evidence showed there was a custom in the mine of the plaintiff in error not to start the cable for ten minutes after it had been stopped, and the custom had been of long standing in the mine, plaintiff in error would be presumed to have knowledge of it and would be bound by such a custom. We think this a correct statement of the law. It was not necessary to prove the plaintiff in error had established such custom by express rule, as, if such proof had been produced, it would have tended to show there was a rule to that effect in force in plaintiff in error's mine, and not a custom. Neither was it necessary to prove express notice of the custom to the plaintiff in error, as proof that the custom was one of long standing in the mine was sufficient to establish the custom as against the plaintiff in er-

ror, as, if the custom existed in the mine for a long time, plaintiff in error would be presumed to have full knowledge of it.

It is further urged that the court erred in refusing to give to the jury plaintiff in error's sixth refused instruction. That instruction was upon the fellow-servant question and we think was properly refused, as it ignored the fact that if the cable was started by the concurrent negligence of the cager and the engineer, who were not fellow-servants of defendant in error, as well as by the negligence of the gripman, who was a fellow-servant with the defendant in error, still there might be a recovery. The rule in this State is, where a servant is injured through the combined negligence of the master or his representative and that of a fellow-servant, the master cannot escape liability on the ground that the negligence of the fellow-servant contributed to the injury. In *Kennedy* v. *Swift & Co.* 234 Ill. 606, on page 610, it is said: "The law is well settled that although the negligence of a fellow-servant of the appellee contributed to his injury, still if such injury was caused, in part, by the negligence of the appellant the appellee may recover, as the general rule is, where a servant is injured through the part negligence of the master and a fellow-servant, the master cannot escape liability on the ground that the fellow-servant also contributed to the injury."

The plaintiff in error has complained of the refusal by the court of other instructions offered on its behalf. We think, however, we have substantially disposed of its contentions in that regard in what has been said in discussing the questions of contributory negligence, assumed risk, and the right of the defendant in error to establish the custom said to exist in the mine not to start the cable for ten minutes after it had been stopped. Suffice it to say, we have considered all of the contentions of the plaintiff in error,

and we are of the opinion the court committed no reversible error in its rulings upon the instructions given or refused.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*