Daniel J. Doering, Appellee, v. Peoria & Pekin Union Railway Company, Appellant.

## Gen. No. 6,033.

1. MASTER AND SERVANT, § 653*—*when rule and custom to be considered in determining the question of negligence.* In an action by an employee to recover for injuries claimed to have been received through the negligence of the master, the rule and custom prevailing in the performance of the master's business will be considered in determining whether the employee was guilty of negligence.

2. MASTER AND SERVANT, § 751*—*when contributory negligence question for jury.* In an action by an employee for injuries claimed to have been received through the master's negligence, it is a question for the jury whether in view of an existing rule and custom as to the performance of the master's business, the employee was in the exercise of due care for his own safety.

3. MASTER AND SERVANT, § 465*—*when nature of servant's employment to be considered in determining question of contributory negligence.* In an action by one working as a crossing flagman at a railroad crossing against a railroad using such crossing to recover for injuries by being struck by a train operated by such railroad company at the crossing, in determining whether or not plaintiff was guilty of contributory negligence, regard must be had to the fact of his employment at the crossing by defendant to ascertain the approach to the crossing of trains and engines and to warn persons of their approach.

4. MASTER AND SERVANT, § 699*—*when evidence shows contributory negligence.* In an action by the crossing flagman to recover for injuries through being struck by a train at the crossing where the evidence shows that the train was in sight for four blocks, the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Vol. CXCVI 9.

weather clear and the time of the accident midday, it is sufficient to show that plaintiff did not properly look in the direction from which the train was approaching.

5. MASTER AND SERVANT, § 699*—*when servant guilty of contributory negligence.* Where the evidence shows, in an action by a crossing flagman to recover for injuries through being struck by a train at the crossing, that at the time of the accident he was neglecting the duty which he was stationed there to perform and while thus neglecting his duty received the alleged injury, which he would not have received if he had performed his duty, the evidence is sufficient to warrant a finding of his contributory negligence.

Appeal from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding. Heard in this court at the October term, 1914. Reversed with finding of facts. Opinion filed October 20, 1915.

STEVENS, MILLER & ELLIOTT, for appellant.

EVANS & EVANS, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Appellee, a crossing flagman on Fulton street in the City of Peoria, was struck by the head end of a passenger car of appellant being driven upon said crossing and was seriously injured, and brought this suit to recover damages therefor, and filed a declaration of three original and two additional counts, which were sufficient to state the case which appellee sought to prove. Appellant filed the general issue and there was a jury trial, and appellee had a verdict for $4,000. A motion by appellant for a new trial was denied, judgment was entered on the verdict and the defendant below appealed. We affirmed the judgment, and we granted a rehearing to enable us to re-examine the evidence, and we have carefully examined it in the record, which is fuller than the abstract.

At the place in question four railroad tracks run northeasterly and southwesterly in the City of Peoria below a bluff and near the river. Fulton street crosses

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

them at right angles. The track nearest the river is the Chicago-bound track of the Chicago, Rock Island & Pacific Railway Company. The track next northwest of that is the Rock Island track for trains coming from Chicago. These are called the outbound and inbound tracks. The third track to the northwest is the main track of the Peoria & Pekin Union Railway Company. The track nearest the bluff is the freight track of the Peoria & Pekin Union Railway Company. On the river side of the tracks, just southwest of Fulton street, is the passenger station of the Rock Island road. About four blocks southwest is the union station which is used by the Peoria & Pekin Union Railway Company. The latter road operated passenger trains from Fulton street to Pekin, a number of miles away. These trains were made up at the union depot, four blocks southwest, with the engine ahead of the car or cars when making the trip to Pekin, and then were backed up to Fulton street. For the protection of the train and the public, there was upon the northeast end of the car, which was ahead as the train backed up, an air brake and an air whistle intended to be operated by the brakeman of the train, whose duty it was to stand on the advancing end of said train as it backed, and blow the whistle to warn people from coming upon the track, and to apply the air brake and stop the train whenever danger required it and when the place was reached where it was to stop. That railway had no depot at Fulton street, but on the northwest side of its main track and southwest side of Fulton street it had a platform running southwest from Fulton street twenty feet or more. The train usually consisted of one car with a ladies' compartment in the northeast end, a baggage room in the middle, and a smoking compartment in the southwest end. A passenger train was due to leave the Rock Island station just southwest of Fulton street at one o'clock p. m., each day, and at the same time this train for Pekin was due to leave

from this platform southwest of Fulton street. On Sunday, April 14, 1912, the Rock Island train left on time, and almost immediately thereafter the Pekin train, backing up, reached Fulton street. It had two cars on that day. Appellee was crossing flagman for all the tracks on Fulton street. He had no duty to stop or signal trains. His sole duty was to watch for coming trains on each track in all directions and to warn foot passengers and drivers of teams and vehicles using said street and to protect them from coming trains. He had a rest shanty southeast of all the tracks. He was on the pay roll of the Rock Island road, and was paid by that company, but appellant paid the Rock Island company one-half of his salary each month. He was, in reality the servant of both companies. So far, there is no substantial conflict in the testimony.

In many other respects the evidence is conflicting. As a single example thereof, some witnesses testified that at the time of the accident the train backed substantially all the way across Fulton street, and then pulled forward until the rear of the car was at the southwest line of Fulton street. Other witnesses testified that the car was backed to about the middle of Fulton street, and was then pulled forward. The engineer is very positive that the northeast end of the train only reached the line of Fulton street. The evidence warranted the jury in finding that the flagman was struck when he was about the middle of Fulton street, and that the train went some further than that. Appellee and some other witnesses heard no bell ringing, but at least three witnesses swore that there was an automatic bell upon the engine at the rear of this train as it was pushed northeast, and that the automatic bell was started to ringing before the train started from the union station, and did not stop until after this accident. Appellee flagged the crossing when the Rock Island train went northeast. He

seems to have gone over to the northwest side of all the tracks and then started back towards his shanty and, at the time he was struck, was facing to the northeast, and perhaps standing still. He was able to tell about how far the Rock Island train had gone up the track. The proof also shows that a Rock Island train from Chicago had been due some twelve or fourteen minutes and had not arrived. It was, in fact, twenty-five minutes late, but there is nothing to show that appellee knew that fact. It is quite possible he was looking northeasterly watching for that past due train. His left hip was struck by the corner of the step on the river side of the advancing car. He was whirled around facing the car a little back of the steps, and threw his hands up against the car to avoid being thrown under it, and then fell down.

The proof by appellee and his witnesses tended to show that as that train approached and reached Fulton street there was no one on the front end of that advancing car and no one operating the air whistle or air brake, and that they were not operated. The brakeman whose duty it was to operate it had left the employ of appellant some five months before the trial, and appellant did not produce him nor show its inability to do so. The conductor testified that he stood in the door of the car, that the brakeman was at his post sounding the air whistle and ready to apply the air brake, and that he saw appellee on the crossing far enough away from the line of the approaching car so as to be in a place of safety and then turned his attention to the passengers standing in the street on the other side of the track so as to see that they did not run any risk of being hurt. Appellant drew out of the appellee on cross-examination, and without objection, that the conductor came to see him the next day after the accident, and told him that "we" (evidently meaning the conductor and brakeman) "were in the end of the car talking." Appellee's son testified in

rebuttal, by way of impeachment of the conductor, that on the next day after the accident the conductor called upon him at his place of business, and in answer to questions told him that at the time of the accident he, the conductor, was in the passenger car counting his tickets and change, and that he did not know where the brakeman was. The conductor admitted that he had these interviews, but denied both of these statements. No one but the conductor testified that the brakeman was at his post of duty, as the car was pushed backward. For all that we know, the jury may have believed appellee and his son and may have disbelieved the denial of the conductor, and may have believed that on the day after the accident the conductor excused it by saying to the son that he did not know where the brakeman was at the time of the accident, as he, the conductor, was in the car counting his tickets and change; and may have believed that he excused himself to the father on the ground that both he and the brakeman were inside the coach talking. They therefore may have believed, from this impeachment of the conductor and from the unexplained absence of the brakeman from the trial, that, in fact, the brakeman was not at his post of duty, and was not sounding the air whistle nor in readiness to apply the air brake.

It is established by evidence introduced by both sides that the rule and requirement of appellant was that the train should be stopped at the southwest side of Fulton street, but that in actual operation the trainmen did often run the car to the middle or the upper side of Fulton street, and that appellee knew this. There is nothing to show that when the car had been so run on to Fulton street it had not been protected by a brakeman with an air brake and an air whistle, as the custom required.

The question what the rule was and what the custom was at that place bears both upon the allegation that

appellant was guilty of negligence in the manner in which this car was pushed across Fulton street, and also on the question whether appellant was in the exercise of due care for his own safety. We do not doubt that the jury were warranted in finding that appellant was guilty of the negligence charged. It has been frequently recognized by the courts of this State that the rule and custom prevailing is to be considered in determining whether an employee is negligent. *Pennsylvania Co. v. Stoelke,* 104 Ill. 201; *North Chicago St. Ry. Co. v. Irwin,* 202 Ill. 345; *Chicago City Ry. Co. v. Lowitz,* 218 Ill. 24; *Franey v. Union Stock Yard & Transit Co.,* 235 Ill. 522; *Sturm v. Consolidated Coal Co.,* 248 Ill. 20, 28, 29. These cases also show that it is a question of fact for the jury whether in view of the existing rule and custom, the injured servant was in the exercise of due care for his own safety.

But in deciding whether appellee was in the exercise of due care for his own safety or was guilty of negligence which materially contributed to his injury, it is further to be considered that he was placed upon that crossing by the railroad companies as a precaution added to the statutory signals of bell and whistle and added to the air whistle and air brakes on the end of the advancing car. He owed his employers the duty to ascertain the approach to that crossing of all trains and engines, and to give timely warning and signals to stop to all foot passengers and to the drivers of all vehicles that a train or an engine was approaching. At and just before appellee was struck by the train there were persons at that street intending to become passengers on that train. Appellee testified that they were near a saloon beyond the fourth track. The conductor testified that they were on the street just beyond the third track. There were also two pedestrians coming up Fulton street from the southeast and already on the Rock Island tracks. All

these people were entitled to warning from appellee that this train was approaching. Appellant was entitled to have appellee ascertain the approach of this train and give warning to the people on the street. If a traveler on the street had been hit by this car, it would have been proof of negligence by the railway company that this flagman did not see this approaching car and did not warn such traveler by the timely display of his flag and otherwise. *Chicago, St. L. & P. R. Co. v. Hutchinson,* 120 Ill. 587; *Chicago & A. R. Co. v. Adler,* 129 Ill. 335; *Chicago, R. I. & P. Ry. Co. v. Clough,* 134 Ill. 586; *Chicago & A. R. Co. v. Blaul,* 175 Ill. 183; *Carlin v. Grand Trunk Ry. Co.,* 243 Ill. 64. This is not the case of a servant of a railway company upon and about the tracks to perform some other duty and with a right to rely upon the railway company to give all statutory and customary signals while he is performing that other duty. This was one of the servants of the railway company whose duty it was to ascertain the approach of the train and give signals therefor. He entirely failed to perform that duty. The train was in sight for four blocks. He could not fail to see it if he looked, for the weather was clear and the time was midday. Under these circumstances the fact that he did not see it proves conclusively that he did not properly look in that direction. It has been held that under such circumstances a person upon whom such a duty rested cannot recover for an injury to himself which he would not have received if he had performed his duty. *Ruane v. Lake Shore & M. S. Ry. Co.,* 64 Ill. App. 359; *Loettker v. Chicago City Ry. Co.,* 150 Ill. App. 69; *Shea v. Chicago & O. P. El. R. Co.,* 183 Ill. App. 380. In *Clark v. Boston & A. R. Co.,* 128 Mass. 1, a flagman was injured under circumstances similar to those in this case and sued his employer for damages and the trial judge directed a verdict for the defendant, and that ruling was sustained. It was there said that the plaintiff undertook to perform a

duty, and neglected his duty, and while thus neglecting his duty he received the alleged injury; that he simply failed to see what it was his duty to see and failed to give the notice he was there to give, and that he had no cause of action. In the case at bar it is our opinion that no jury could reasonably find otherwise than that appellee was not in the exercise of due care for his own safety, but was negligent and failed to perform the duty he owed appellant, and would not have been injured if he had performed that duty, and that his negligence materially contributed to the injury for which this suit is brought. The judgment is therefore reversed.

*Reversed with finding of facts.*

MR. JUSTICE NIEHAUS took no part.

Finding of facts to be incorporated in the judgment.

We find from the evidence that appellee was not in the exercise of due care for his own safety, and failed to perform the duty he owed to appellant; that he would not have been injured if he had performed that duty; that he was negligent and that his negligence materially contributed to the injury for which this suit was brought, and that he therefore has no cause of action against appellant for said injuries.