**Waleria Waiswila, Administratrix, Appellee, v. Illinois Central Railroad Company, Appellant.**

**Gen. No. 26,075.**

1.   MASTER AND SERVANT. § 717*—*when question for jury as to violation of custom arises.* In an action under the Federal Employers' Liability Act to recover for the death of a car sealer who was killed by a switch engine backing against one of the two cars between which he was walking, catching him between the cars, where the evidence as to the existence of a custom for the switch engine bell to be rung before the engine was moved and as to the violation of this custom is conflicting, the existence of the custom and the violation thereof are for the jury.

2.   MASTER AND SERVANT, § 191*—*when warning is necessary.* Failure of the master to give the customary warning to his servant when in a position of danger is negligence.

3.   MASTER AND SERVANT, § 177*—*when removal of warning sign is negligence.* In an action under the Federal Employers' Liability Act to recover for the death of a car sealer who was killed, while passing between cars in performing his duty in obedience\to the yardmaster's orders, by the impact of a switch engine against one of such cars, it was negligence on the employer's part for the yardmaster to remove the red card from the end car on the track on which the car sealer was working, thereby notifying the crew of the switch engine that such cars were in readiness for moving and coupling up.

4.   MASTER AND SERVANT, § 335*—*what risks are assumed by car repairer.* While a car sealer's work is dangerous and he assumes the risk of the extraordinary dangers incident to work of such character, he does not assume the risk of an unexpected negligent departure from the customary method of doing such work.

5.   MASTER AND SERVANT, § 335*—*what increased risks are not

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Vol. CCXX 8

*assumed by car repairer.* In an action under the Federal Employers' Liability Act to recover for the death of an employee, even if the employee knew and assumed the risks of an inherently dangerous method of doing the work, he did not assume the increased risk attributable to negligence in pursuing the method, not to the method itself.

6. MASTER AND SERVANT, § 579*—*who has burden of proving assumption of risk.* In actions under the Federal Employers' Liability Act, the burden of proving assumption of risk is on the defendant.

7. APPEAL AND ERROR, § 1410*—*what is effect of jury's finding.* In an action under the Federal Employers' Liability Act, where the evidence is such as to require the submission of the question of assumption of risk to the jury, their finding thereon will not be disturbed unless manifestly against the weight of the evidence.

8. MASTER AND SERVANT, § 698*—*when evidence shows no assumption of risk.* In an action under the Federal Employers' Liability Act to recover for the death of a car sealer, killed while performing his duties in obedience to the yardmaster's orders, there being evidence that a switch engine backed against the cars on which he was working without any signal having been given and that it had so backed pursuant to notice from the yardmaster that the cars on that track were ready to be moved, *held* that such evidence was sufficient to support a finding that the car sealer did not assume the risk.

9. MASTER AND SERVANT, § 779*—*when instruction as to evidence is proper.* In an action under the Federal Employers' Liability Act to recover for the death of an employee, an instruction to the effect that plaintiff need prove his case by only slight preponderance of the evidence, *held* not erroneous.

10. LIMITATION OF ACTIONS, § 74*—*when amendment is not subject to limitations.* Where the declaration in an action to recover under the Federal Employers' Liability Act for the death of a car sealer caused by a switch engine backing against the cars on which he was working and catching him between them, averred in general terms the careless and negligent management, operation, etc., of defendant's cars, an amended count alleging the custom of ringing the bell on defendant's engines and the violation of this in this instance, causing the accident, does not state a new cause of action, but simply sets forth the particular negligent operation complained of, and is not subject to the statute of limitations though the accident happened August 1, 1914, and the amendment was filed in January, 1919.

11. DEATH, § 67*—*when damages are not excessive.* In an ac-

---

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

tion under the Federal Employers' Liability Act to recover for the death of an employee, a verdict of $12,500 is not excessive where the evidence shows that he was 44 years old, of good habits and good health, had earned $852.44 for the year preceding his death and left surviving him a widow and a child about 6 years old.

12. APPEAL AND ERROR, § 1514*—*when remark of attorney is not prejudicial.* In an action under the Federal Employers' Liability Act to recover for the death of an employee by an accident occurring in August, 1914, the statement of the counsel in his argument on the trial, in January, 1919, that it was a matter of common knowledge that wages in all lines had increased, is not ground for reversal.

13. EVIDENCE, § 14*—*what is matter of common knowledge.* It is a matter of common knowledge that between August, 1914 and January, 1919, there had been a great increase in wages and in the cost of living.

14. MASTER AND SERVANT, § 828*—*what is basis of compensation for death.* As to whether the basis of compensation in an action under the Federal Employers' Liability Act should be the wages and cost of living at the time of the accident or at the time of the trial, *quære.*

Appeal from the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding. Heard in this court at the March term, 1920. Affirmed. Opinion filed November 29, 1920. *Certiorari* denied by Supreme Court (making opinion final).

VERNON W. FOSTER, for appellant; JOHN G. DRENNAN and WALTER S. HORTON, of counsel.

TONE & ROCKHOLD, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

August 1, 1914, Kazimer Waiswila while employed by defendant was killed in its freight yards in Chicago. The administratrix brought suit to recover compensation under the Federal Employers' Liability Act and upon trial had a verdict and judgment for $12,500, and defendant appeals.

The gist of plaintiff's claim was the violation by

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

defendant of a custom that a locomotive working in the yards should, before starting from a stop, ring its bell to warn car sealers and other servants of defendant working in and about the freight cars, by reason whereof Waiswila, while obeying an order from the yardmaster, was caught between two cars, receiving injuries from which he died.

Waiswila was employed by defendant as a trucker and car sealer in the South Water street yards handling outbound freight. The outbound freight house was on the east side of the yards; next west of it were seven tracks numbered 1 to 7 from east to west, which ran parallel to each other and extended four city blocks from South Water street on the north to Madison street on the south. The freight cars for outbound freight were switched in and "spotted" during the night. By "spotted" is meant that the freight cars would be placed opposite the doors of the freight house and runway boards placed from the house to the car and on from car door to car door, so that there would be a continuous aisle through the cars from the east to the west through which freight would be trucked to the proper car on any of the seven tracks. Some cars are longer than others, and that their doors may be in line it is necessary to uncouple them, leaving spaces between. When the truckers had finished loading the cars the runway boards would be removed and the doors closed and sealed. The sealing of the cars was in charge of Michael Fitzgerald, sometimes referred to as the yardmaster. Each morning he would place a red card on the south end of each cut of cars on each track to indicate that the loading and sealing were in progress; this was a signal to the switching crew on the engine that they should not move any of these cars until the red card was taken down. When a cut of cars had been loaded and the runway boards removed and the cars sealed. Fitzgerald would remove the red card on that track

as a signal that the engine could couple them up. Plaintiff alleged and introduced evidence tending to show that at such times, before a switch engine moved, it was the custom to ring the bell as a warning to car sealers and truckers and others working in and around the cars. The existence of such a custom was controverted by defendant. While it may not have been proven that it was the custom to ring the bell every time an engine moved from a momentary stop, it was sufficiently proven that it was customary to ring a bell when an engine started from a stop of some minutes; and it is conceded, in argument, that the engine in question, before it started to make the move resulting in the fatal accident, had been standing such a length of time as to require its bell to be rung when it started.

In sealing the different cars and in carrying away the runway boards, the car sealers in passing from one track to another would pass between the uncoupled cars. This would seem to be necessary, as frequently a cut of cars would extend over two city blocks. There is evidence from which the jury could conclude that in doing this work the men relied upon the fact that the red card would not be removed until the sealing had been completed, and also that the engine would sound its bell before it began to couple up the cars.

Upon the day of this accident Waiswila commenced sealing cars about 5 o'clock in the evening. He was working on track number 3 when Fitzgerald ordered him and another sealer to go over to track number 6 and finish the work there. There is testimony that Fitzgerald told Waiswila to go on the west side of that track to seal the cars, while the other sealer was to work on the east side, and they started to obey this order. In the meantime Fitzgerald went to the south end of the cut on track 6 and removed the red card and immediately a switch engine started to back north on that track, and as Waiswila was passing

between the first and second southerly cars to reach the west side of the cut, they suddenly came together and he was caught between them and killed. Before the engine started it was standing about 50 feet south of the cut, and some witnesses testified that at the time it started no bell was rung; other witnesses testified to the contrary.

The important questions of fact as to the existence of a custom to ring the bell of an engine before starting, and the violation of this custom upon the particular instance in question, were properly submitted to the jury. We must assume that the variant stories, attempts to weaken the testimony of witnesses and their appearance upon the stand, all received due and proper consideration in weighing the evidence. The conclusion was favorable to plaintiff and we cannot say that this is so manifestly wrong as to require us to disturb it.

Failure of the master to give the customary warning to his servant when in a position of danger is negligence. *Sturm v. Consolidated Coal Co.*, 248 Ill. 20; *Doering v. Peoria & P. Union Ry. Co.*, 196 Ill. App. 129; *Chicago, R. I. & P. Ry. Co. v. Rathneau*, 225 Ill. 278; *Pennsylvania Co. v. Stoelke*, 104 Ill. 201. Failure to give warning under somewhat similar circumstances has been held to be negligence under the Federal Employers' Liability Act. *Central R. Co. of New Jersey v. Colasurdo*, 192 Fed. 901: *Evans v. Detroit, G. H. & M. R. Co.*, 181 Mich. 413; *Bombolis v. Minneapolis & St. L. R. Co.*, 128 Minn. 112.

It was also defendant's negligence for Fitzgerald to order Waiswila to go to the west side of track 6 to seal cars, and while he was doing so for Fitzgerald to take the red card from the cut of cars on that track, thereby notifying the switching crew that the cars were ready to be moved and coupled up. In *Norton Bros. v. Nadebok*, 190 Ill. 595, it was held that when a servant obeyed the order of his superior in a partic-

ular thing in the absence of any warning or notice, he "had the right to assume that his superior, who gave the order, would not by his own negligence make the act which he commanded him to do, and which he was bound to obey, unsafe." The cases cited by the defendant upon the question of negligence are not applicable, for none of them involved a failure to give a customary warning nor an instance of a foreman directing a servant to do a particular work and then doing something to make unsafe the place where the work was to be done.

We cannot assent to the contention that Waiswila assumed the risk. It is undoubtedly true that work of this kind is dangerous and that he assumed the risks of the extraordinary dangers incident to this kind of work (*Boldt v. Pennsylvania R. Co.*, 245 U. S. 441, 19 N. C. C. A. 461), but he did not assume the risk of an unexpected negligent departure from the customary method of doing this dangerous work. The correct distinction is stated in *Chesapeake & O. Ry. Co. v. Proffitt*, 241 U. S. 462, as follows:

"Even if plaintiff knew and assumed the risks of an inherently dangerous method of doing the work, he did not assume the increased risk attributable not to the method but to negligence in pursuing it."

To the same effect are *Devine v. Chicago, R. I. & P. Ry. Co.*, 266 Ill. 248, affirmed in 239 U. S. 52; *Lancette v. Great Northern Ry. Co.*, 140 Minn. 488; *Kenney v. Seaboard Air Line Ry. Co.*, 165 N. C. 99, affirmed in 240 U. S. 489; *Chesapeake & O. Ry. Co. v. De Atley*, 241 U. S. 310; *Bassham v. Chicago, I. & L. Ry. Co.*, 214 Ill. App. 74. These were cases under the Federal Employers' Liability Act. We adopt as applicable to the instant case what is said in the *Bassham* case, *supra*:

"The burden lay with defendant to prove the assumption of risk, and the evidence being such as to require its submission to the jury (*De Atley* case,

*supra,* and *Kanawha & M. Ry. Co. v. Kerse,* 239 U. S. 576, 581), we should not disturb their finding on that question unless it is manifestly against the weight of the evidence bearing on it, which we are not disposed to hold.''

The jury having believed that the accident happened because of the unexpected negligent violation of the customary method of doing the work, under the rule stated in the cases *supra,* Waiswila did not assume the risk.

The third given instruction at the request of plaintiff is not open to the criticism made by defendant. It does not assume to state the elements of plaintiff's case which would require a favorable verdict. It is simply an instruction dealing with the *quantum* of proof. Instructions to the effect that plaintiff need prove his case by only slight preponderance of the evidence have been approved in *Taylor v. Felsing,* 164 Ill. 331; *Donley v. Dougherty,* 174 Ill. 582; *Norton v. Clark,* 253 Ill. 557.

In view of what we have said concerning the assumption of risk the instructions given upon the subject were not prejudicial to the defendant. Some of the instructions tendered by defendant and refused might have been given and some of those given at the request of plaintiff might properly have been refused, but we do not find anything in this respect which requires a reversal.

The accident happened August 1, 1914. Upon the trial in January, 1919, plaintiff, by leave, filed an amended count alleging the custom of ringing the bell on defendant's engines and the violation of this custom in this particular instance causing the accident. To this defendant filed a plea of the statute of limitations, but plaintiff's demurrer thereto was sustained. This amended count did not state a new cause of action. The original declaration averred in general terms the careless and negligent management, operation, etc., of defendant's cars. The amended

count was included in this charge of general negligence and simply set forth the particular negligent operation complained of. *Chicago City Ry. Co. v. Jennings,* 157 Ill. 274; *North Chicago St. R. Co. v. Aufmann,* 221 Ill. 614.

It is said that the verdict of $12,500 was excessive. The evidence showed that deceased at the time of his death was 44 years old. He left surviving him a widow and a child about 6 years of age. He was a man of good habits and of good health. His earnings for the year preceding his death amounted to $852.44. Verdicts in death cases for larger amounts have been sustained many times. *Northern Trust Co. v. Grand Trunk & Western R. Co.,* 207 Ill. App. 11; *Thornbro v. Kansas City, M. & O. Ry. Co.,* 92 Kan. 681; *Kansas City Southern Ry. Co. v. Leslie,* 112 Ark. 305; *Phillips v. Union Pac. R. Co.,* 100 Neb. 157; *Gulf, C. & S. F. Ry. Co. v. Beezley* (Tex. Civ. App.), 153 S. W. 651. It is difficult to determine with certainty the proper amount of financial compensation for the taking of a life. The policy of Illinois as expressed in its statute fixes the maximum amount at $10,000. Under the Federal Liability Act this can be exceeded and it can hardly be said that an excess of $2,500 over the maximum under our statute is grossly excessive. The tests proposed by defendant based upon expectancy tables are hardly convincing. The judgment of a jury, with its knowledge of general conditions and affairs, must be given great weight and we cannot say that the conclusion in this case was so improper as to indicate any passion or prejudice.

It is said that the jury were improperly influenced by the argument of counsel for plaintiff, in which he said that it was a matter of common knowledge that wages in all lines had increased. In ruling upon an objection to this, the court interpreted this to mean that the jury might consider the amount of damages in the light of their "experience, observation and

understanding in the ordinary affairs of life.'' We think it is entirely safe to assume it was a matter of common knowledge that between August 1, 1914, the date of the accident, and January, 1919, the date of the trial, there had been a great increase not only in wages but in the cost of living, and we do not think anything said by counsel or by the court added anything to the knowledge of the jurors in this respect.

It is perhaps not necessary to pass definitely upon the proposition as to whether the basis of compensation in this case should be the wages and cost of living at the time of the accident or the time of the trial, for the reason (1) that the verdict cannot be considered grossly excessive on either basis; and (2) we cannot determine with certainty all the elements entering into the consideration and conclusion of the jury as to the proper amount of compensation.. In two English cases the amount of awards for injuries under the Workmen's Compensation Law were increased to an amount commensurate with the increase in wages. *Bevan v. Energlyn Colliery Co.* (1912), vol. 81 K. B. 172; *Woodilee C. C. Co. v. McNeill* (1918), Law Journal, 17. In *Washington & Rockville R. Co. v. La Fourcade,* 48 App. Cas. (D. C.) 364, this precise question was raised, and it was held that the jury should consider the conditions with reference to the value of the dollar at the time of the trial, the opinion saying among other pertinent things.:

''Hence in measuring it (damage) in dollars it is competent for the jurors to take into consideration those conditions, social and economic, which at the time are generally known and acknowledged to exist, and which from universal experience are applied by mankind in fixing values.''

We find in the record no sufficient reason to reverse and the judgment is affirmed.

*Affirmed.*

HOLDOM, P. J., and DEVER, J., concur.