GOODALL *vs.* McLEAN.

*In the matter of the estate of* JOHN HYER, *deceased.*

Where the will contained the following clause, "Upon the death of either of my sons John or George, without lawful issue, the one-fourth part of the devises and bequests made to him in this my will shall go to his wife, if she shall then be living, and the other three fourths of the same shall be divided, share and share alike, among my surviving children and the legal heirs of those who may be deceased;" and the testator's son John died without issue, before the testator, leaving his wife, "then living;" and she survived the testator,—*Held,* that John's widow was entitled to one fourth of all the devises and bequests made to John. The condition that the widow of John shall "then be living," refers to the time of John's death, and not to the time of distribution.

A clause of substitution is generally referable to the death of the testator.

Where the devise or bequest is to the donee by name, with a gift over in case of death, if the event happen in the testator's life-time the ulterior gift takes effect immediately on the testator's decease.

THE EXECUTOR, *in person.*
S. P. HUFF AND A. UNDERHILL, *for Legatees.*

THE SURROGATE. The testator devised and bequeathed to his wife, for life, one third of the rents, issues, and profits, of his real and personal estate, and the remaining two thirds, after certain deductions, he gave equally between his "sons and daughters, and the issue of such of them as may die leaving lawful issue, such issue to take the share the parent would have taken if living." On the death of his wife, and the majority of his youngest child, he directed the sale of his estate, and the distribution of the proceeds, as follows : "The proceeds of such sale shall be equally divided for the benefit of all my children, and the issue of such of them that may die leaving lawful issue ; such issue to take the share or interest which the parent

would have taken." After various other provisions, the following clause occurs: "Upon the death of either of my sons John or George, without lawful issue, the one-fourth part of the devises and bequests made to him in this my will, shall go to his wife, if she shall then be living, and the other three fourths of the same shall be divided share and share alike among my surviving children, and the legal heirs of those who may be deceased. I do further order and direct, that in case of the death of either of my daughters without issue, their respective husbands, if living, shall have the one-fourth of what is in this my will given to them, and the remainder of the same shall be divided share and share alike among my surviving children, and the legal heirs of such as may be deceased."

The testator's son John died before the testator, leaving his wife "then living." She survived the testator, but died before the testator's widow. John not having left any surviving issue, the question is whether John's widow became entitled to one fourth of the devises and bequests made to John by his father's will. I can see no reason why not. It appears to me, the exact contingency in the mind of the testator, upon which he designed to make the widow of his son the recipient of his bounty, has arrived. John has died "without lawful issue," leaving his wife "then " "living." In such case, says the testator, I give one fourth, "of the devises and bequests made to him in this will, " "to his wife." Suppose this clause had not contained the words "then living," and provided for the gift of one fourth to John's widow in case he died without issue, could there have been a doubt that the widow would take, whether that contingency occurred before or after the testator's decease? The very object of such provisions is, in general, to prevent a lapse, and it might as well be contended that John's issue, if he had left any, would not have taken under the clause in favor of issue, as that the widow does not take. The condition annexed

to the devise to John's widow, that she shall "be then living," refers by the context to the time of John's death. The words are, "upon the death of either of my sons," &c., the one-fourth part, &c., shall go to his wife if she shall "*then* be living." When? Why, "then;" that is, "upon the death" of her husband. There can be no doubt this is the plain, ordinary, literal signification of the clause. Intention is to be gathered from the language of the will in its usual, customary meaning, unless the terms are controlled by other words which go to show a contrary sense. . It is urged, in the present case, that the proviso, "if she shall then be living," was intended to apply to the time of distribution, and not to the time of John's death. Such a rule of construction has been applied to a clause of *survivorship*, where, after a previous life estate, the remainder has been directed to be distributed among a *class* of persons, after the death of the life-tenant. But in these cases, the provision for survivorship has been immediately connected with the direction to pay or distribute. I am not aware of any case where there has been a general clause of substitution, independent of any particular bequest, and applicable to all the gifts of the will, which has been limited because one of the gifts happened to be postponed in possession until after the death of a tenant for life. In this will there is a devise of real estate to John, which had effect as a vested interest, though not in possession, immediately on the testator's decease; and it cannot be contended that John's widow was not entitled to one fourth of that; for she was living both at John's death, and at the testator's death, when that devise became operative. So, also, two-thirds of the rents and profits of the residue of the estate are given by the will to the testator's children, and that devise took effect when the testator died. John's widow accordingly took one fourth of John's share in these rents. John's share in the proceeds of the property which was sold after his mother's death, would, if he had survived his

father, have been a vested interest; and his widow became entitled to one fourth of that likewise, though the possession or distribution was postponed for the convenience of the estate. The event on which John's widow was to be substituted, was his death. It was not required to be his death at any particular time, as after the demise of the testator; and, therefore, death at any period is within the terms of the will, free from any condition, except that when it occurs his widow must *then* be living in order to become an object of the testator's bounty.

A clause of substitution is generally to be referred to the death of the testator (*Maberly* vs. *Strode*, 3 *Vesey*, 450. *Brown* vs. *Bigg*, 7 *Vesey*, 279.) It may be laid down pretty broadly, that where the devise or bequest is to the donee by name with a gift over in case of death, if the event happen in the testator's lifetime, the ulterior gift takes effect immediately on the testator's decease. (*Darrel* vs. *Molesworth*, 2 *Vernon*, 378. *Haughton* vs. *Harrison*, 2 *Atk.*, 329. *Mackinnon* vs. *Peach*, 2 *Keen*, 555.) In the case of *Le Jeune* vs. *Le Jeune*, 2 *Keen*, 701, the will gave an estate for life to the testator's wife; directed the sale of the property at her decease, and the distribution of certain shares of the proceeds among the testator's sons *living* at their mother's death; " and in case of either of their deaths," then the share of the one dying to be paid to his issue. One of the sons died *in the testator's lifetime*, leaving a daughter who survived the testator, and she was held to be substituted to her father's share. (See *Rheeder* vs. *Ower*, 3 *B. C. C.*, 240.) In *Humphreys* vs. *Howes*, 1 *Russ & My.*, 639, there was a trust for life, and then a direction to pay E. & F. or the survivor, and in case both should die without issue before their shares were payable, then to pay other parties. E. & F. both died without issue, *in the testator's lifetime*, and the ulterior bequests were sustained. In *Willing* vs. *Baine*, 3 *P. Wms.*, 113, the will gave a certain

sum to each of the testator's children, payable at 21 ; and in case of the death of any before that age, then to the survivor. A child died *before the testator*, and his legacy was held to survive. In *Walker* vs. *Main*, 1 *Jac. & Walk.*, 1, there was a devise of real estate to the wife for life, and then a trust to sell and distribute among children and grand children ; but if any of them died before his share becoming due, then to the survivors. Two of the children died *in the lifetime of the testator*, and it was determined that their shares passed to the survivors. The case of *Thornhill* vs. *Thornhill*, 4 *Madd.*, 377, is the only one to be found sustaining a contrary doctrine ; and it is not only opposed to the current of decisions, but its authority has been very explicitly denied in *Smith* vs. *Smith*, 8 *Simon*, 353. In *Smith* vs. *Smith*, the residuary estate was given to trustees in trust for the testator's wife for life, and on her decease to divide among all his children *then* living ; and if any should die in his wife's lifetime, then his or her share to go over to issue. One of the children died *before the testator*, and his issue was declared to be entitled. (*See Giles* vs. *Giles*, 8 *Sim.*, 360. *Collins* vs. *Johnson*, 8 *Sim.*, 356, *n*. *Jarvis* vs. *Pond*, 9 *Simon*, 549.) It appears, then, that the death of the testator's son John in his lifetime did not prevent or defeat the ulterior gift of a portion of the share devised to him, over to his wife ; and as the words " then living" are referable to the time of John's death, the conclusion is inevitable, that on the testator's decease John's widow took a vested interest in one fourth of all the devises and bequests made to John. The decree must direct a distribution of the estate accordingly, and the portion given to John's widow must be paid to her administrator.