**Michael Ruane v. The Lake Shore & Michigan Southern Railway Company.**

64    359
94    ¹187
f94    ¹188

1. NEGLIGENCE—*On the Part of the Plaintiff, Prevents a Recovery.*— A flagman on a railroad crossing, whose duty it is to watch for trains and to give signals, etc., can not recover for any injury by a train which it was his duty to see and signal as it approached the crossing.

2. RAILROADS—*Statutory Signals.*—The statutory signals to be given by trains on approaching street crossings are designed for the benefit of the public and not for employes of the company.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Heard in this court at March term, 1896. Affirmed. Opinion filed May 14, 1896.

### Statement of the Case.

This was an action to recover for personal injuries sustained by appellant while in the employment of appellee as a flagman at 51st street in the city of Chicago.

The plaintiff testified:

"My duties consisted of signaling trains coming from all directions, block them if there was any danger, and if there was any people in the way I was supposed to signal them to keep out of the way, keep from one place to another and stop them, and if I seen any train coming, if it was in any danger, I was supposed to signal it not to come, and if there was no danger, I was supposed to signal them to come ahead. I was familiar with what signals to give trains. I recollect the night of October 18, 1893; a few minutes before the accident happened my lamp went out and I had to go up to the tower to light it; I had no matches and no place to go if I didn't go to the tower. At the time I came to work there that is the place I got my lamp. That is the directions I got—to go up and get my lamp when evening came and signal every train, and a few minutes before this train came along I went up to the tower when my lamp went out; it went out once or twice and I went up to light it. When I left the tower I took the direction of going south. The stairs lead south down. When on the tower I had a view of the track. I looked up and down and I seen a train coming from the south—coming from the north, going south.

Q. Did you or not see any coming from the south? A. No sir; I didn't see any at the time.

Q. When you reached the bottom of the stairs, then what direction did you take? A. Well, I took to the north; then I see a train coming from the south, going to the north, and I got on the crossing to give it a signal to come ahead.

The Court: You say you saw a train coming from the south toward the north? A. I saw a train coming from the north. I seen a train coming from the north, going south. I was about two feet from the tower. I should

judge the track on which this locomotive afterward came is about four feet from the outside of the tower. After I got off the tower I walked twenty-five or thirty feet north before I signaled the train. I stopped within a few feet of the tower on the sidewalk—the crossing sidewalk going east and west. The crossing runs east and west. I was standing on the crossing. The train that was coming from the north I signaled to come ahead. Had the lamp in my hand. I signaled them to come ahead. When I turned the lamp, signaling the train coming from the north, the train came from the south—I didn't see it—and hit me on the arm; it hit me on the hand and knocked me down between the two trains. There was no whistle blown; if there was a whistle blown I would not hear it. The train was running about forty or forty-five miles an hour, I should judge. When the train hit me I was standing to the south of the south sidewalk, my back was toward the south and my face was toward the north. Up to the time the train struck me I had not seen the train at all. When the train struck me I was standing on the sidewalk of the crossing. The sidewalk on which I was standing lay to the north of the tower house, about two feet or so. It is about four or five feet, I guess, probably more, from the south end of the tower to the end of the stairs. I couldn't tell the total distance.

Q. Between what tracks at that point was the proper position for the flagman when you was flagging them? A. I had no proper place; the flagman is supposed to be—my rules—he is supposed to be all over the crossing; he is supposed to be right at the street, on the street, on the crossing. Yes, it would do for him to flag standing alongside of the tower; that is, the sidewalk—south of the sidewalk; there is no south sidewalk. I was standing on sidewalk north of tower. I was standing on south sidewalk of 47th street. I judge I could see down the track about four or five blocks, anyway south, about the same north. The train which struck me was one it was my duty to flag at that time. It was my instructions to flag all trains at that crossing—Lake Shore trains, Rock Island trains, and all trains

that passed there.　When I was stationed on duty as a flagman I looked up and down the track.　That was my duty, to watch for trains that were coming there either way.　I was expected to perform that duty as a part of my employment.

The Court:　At the time you were struck, how far were you from the west rail ?　A.　I should judge about three feet.　I think so.　It is possibly nine or ten, or probably eight feet (I didn't measure it), between the westermost rail of the track on which the train was moving to the eastermost rail of the next track to the west.　Eight feet between the two; between the nearest rails.

The Court:　Do you not understand it now?　How far is the distance from the west rail to the east rail of the track that is next to it ?　A.　That is about eight feet or so, I think.

. 　Q.　Now we want the distance from the west rail to the east rail of the second track.　A.　Of the one that struck me ?

Q.　Yes, from the west rail of the track on which you were struck—on which the engine was running that struck you; the distance from that to the east rail of the second track west.　A.　Well, I should judge—you mean the rail that the engine was going on, one of them would be on the west and the eastern rail of the other track would be—that would be about fourteen or fifteen feet away.　The track on which train was moving that hit me consisted of two rails; one was west of the other.　The cars and engine projected over the rail, about two feet, two and a half beyond the rail."

The evidence tended to show that the train which struck appellant was running at a rate of speed prohibited by the ordinances of the city, and did not ring a bell or blow a whistle in accordance with requirements of the law.

The court directed the jury to return a verdict for the defendant.

Edward A. Morse, John Mayo Palmer and Robertson Palmer, attorneys for appellant, contended that where there

is any evidence which, with all legitimate inferences fairly deducible therefrom, tends to support the case made by the plaintiff's declaration, he is entitled, as matter of law and of right, to take the verdict of the jury upon such evidence; and the court can not lawfully withdraw the case from the consideration of the jury. N. Y., C. & St. L. Ry. v. Luebeck, 157 Ill. 604; Blanchard v. L. S. & M. S. Ry., 126 Ill. 420.

The ultimate fact in the case was whether the defendant was guilty of negligence as alleged in any of the counts of the plaintiff's declaration. Whether the evidence fully establishes a fact of this character is not to be determined as matter of law, but is one peculiarly within the province of the jury. Pullman Car Co. v. Laack, 143 Ill. 251.

Gardner & McFadon, attorneys for appellee.

The appellant should not recover in this case because he failed to see what it was his duty to see and failed to give the notice he was stationed on the street to give. His own neglect of duty in the premises makes him guilty of such contributory negligence that he can not recover. Beach on Contributory Neg., Sec. 190; Clark v. B. & A. Ry. Co., 128 Mass. 4; R. R. Co. v. Crawford (Ala. 1890), 8 Southern Rep. 245.

A flagman is bound to know as one of his duties when a train which he has to signal will arrive at the place where the performance of his duties requires him to do the signaling. R. R. Co. v. Clough, 34 Ill. App. 130; R. R. Co. v. Clough, 134 Ill. 592; Chicago & St. L. Ry. v. Hutchinson, 120 Ill. 187; C. & A. Ry. v. Adler, 129 Ill. 335.

And as a corollary of this position a flagman is bound to keep out of the way of the trains which he has to signal.

The appellant being employed to stand in a dangerous place for the purpose of signaling trains he assumes the risks of accident from the trains he was to signal, as one of the risks of his position. Beach on Cont. Neg., Sec. 360; Kennedy v. Manhattan Ry. Co., 33 Hun (N. Y.) 457; Berkfitz v. Humphreys, 145 U. S. 418.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

Appellant was employed to keep watch for the approach of all trains, to signal them to stop if necessary, and thus to guard the public and the trains of appellee. In this position he owed a duty to the public as well as to appellee. There is nothing tending to show that it was necessary for him to stand upon the track, or so near it, that he would be struck by a passing train.

Whether trains were on time, or whether they complied with statutory regulations as to ringing bells, etc., made no difference as to his duties, which were to be watchful and to give necessary warning at all times. Chicago, St. L. & P. Ry. Co. v. Hutchinson, 120 Ill. 587–593; C., R. I. & P. Ry. Co. v. Clough, 134 Ill. 586–592; Same, 33 Ill. App. 130; C. & A. Ry. Co. v. Allen, 129 Ill. 335.

Appellant can not rely on a violation of the statute by appellee to enable him to recover. The statute is designed for the benefit of the public and not for employes of the railway whose duty it is at all times and under all circumstances to protect the public at the crossing in question. Gibson v. Leonard, 143 Ill. 182–196.

Appellant failed to see a train it was his duty to see, and failed to give a notice he was employed to give; but for such negligence on his part he would not have been injured. He therefore can not recover for injuries, the consequence of his own omission of duty. Clark v. B. & A. Ry. Co., 128 Mass. 4.

The judgment of the Circuit Court is affirmed.