## Illinois Central R. R. Co. v. Neil Curran.

1. ORDINARY CARE—*No Recovery Without.*—Where an employe of a railroad company is injured because of a careless and reckless disregard for his own safety he can not recover.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1900. Reversed. Opinion filed March 25, 1901. Rehearing denied.

Statement by the Court.—September 22, 1896, appellee, while in the employ of appellant as foreman of a gang of men, was injured by one of appellant's suburban trains while he was walking along the ends of the railroad ties of a track on which appellant's servants were backing one of its trains into its railroad yard between Randolph and Van Buren streets, near the lake shore, in Chicago. The accident resulted in a loss to appellee of the three last fingers of his left hand, leaving the thumb and index finger, and in other minor injuries.

Appellee brought suit, a trial of which, after motions interposed by appellant's counsel at the close of plaintiff's evidence and at the close of all the evidence to instruct a verdict for the defendant were overruled, resulted in a verdict assessing plaintiff's damages at $2,500 and a judgment thereon.

I. C. R. R. Co. v. Curran.

The original declaration charges that the company was negligent in operating its train of cars while plaintiff was walking close to and upon one of its tracks, and by reason thereof ran over plaintiff and his left hand, causing the injury.

Three additional counts were filed, the first of which charges negligence in the running of the train while switching, in excess of nine miles per hour, in violation of a city ordinance; the second alleges negligence in failing to ring a bell of the locomotive engine continually while running within the city, in violation of the city ordinance; and the third charges negligence in failing to station a man on the forward car of the train while it was being backed for the purpose of maintaining a lookout. The plea to all the counts was the general issue.

W. A. HOWETT, attorney for appellant; J. G. DRENNAN, of counsel.

JAMES C. MCSHANE, attorney for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

It is claimed by appellant's counsel that there should be a reversal because he says that the evidence shows that the appellee was guilty of contributory negligence, that appellant was not guilty of any negligence, and if so, that the negligence was that of a fellow-servant, and because the court refused proper instructions.

In view of the conclusion arrived at by the court, it seems unnecessary to consider in detail any of the questions discussed by counsel, except that of contributory negligence of appellee. If the court committed any error in refusing instructions asked by appellant, aside from the instruction to find it not guilty, that could not affect the result reached. As to the negligence of appellant, we think that, so far as concerns the rate of speed and the failure to have a man on the forward car of the train while it was being backed, the evidence presents a question of fact which was properly submitted to the jury, but that the finding of the jury that

the appellant was negligent in these respects was clearly and manifestly against the evidence. The claim that there was negligence in not ringing the bell on the locomotive can not be sustained, because the ordinance in that regard has no application to the facts in this case, which show that the injury was caused by a train of cars being backed or shunted into appellant's yard after the cars were separated and had gone a considerable distance from the engine.

The evidence shows that appellee had worked as a track foreman from April 6th to the date of the accident for appellant, having under him from sixty-five to eighty men, and that they were engaged in depressing and changing the tracks of appellant's railway along the shore of Lake Michigan from a point between its Twelfth street station to Randolph street; that he had worked some four or five days in the vicinity of Randolph street about nine days before the accident; that two days before the accident he worked on tracks 1 and 2 at the Randolph street viaduct. He was hurt just before or just after eight o'clock in the morning, at a short distance south of the Randolph street viaduct; he says fifteen or twenty feet south of the viaduct, but other witnesses say the place of the injury was further south; some say sixty feet, and others, still further south.

Appellant's depot and platform, where its suburban trains received and discharged passengers, is just north of the Randolph street viaduct and extends north to about Lake street. Leading into this depot there are six tracks, which are numbered from the west, beginning with No. 1 and passing to No. 6, which is the easterly track and next to the tracks of the Michigan Central Railroad, which are separated from appellant's tracks by a fence. These six tracks, as they extend to the south, merge into two tracks at about the Randolph street viaduct, and then a short distance further south again diverge into four tracks, the two easterly of which, next to the Michigan Central tracks and separated therefrom by a fence, are known as tracks 5 and 6. On the west of track 1 there is an open space vari-

ously estimated by the witnesses at from ten to twenty-five feet, west of which, some of the witnesses say at the time of the accident there was a stone wall, but others say that the wall had not then been built.    East of track No. 6 and between it and the fence separating that track from the Michigan Central tracks, there was an open space variously estimated at from seven to twenty feet.    There is some evidence that the open space west of track 1 was somewhat obstructed by piles of dirt and railway ties, but it was not so obstructed that a person could not walk along this space. There is evidence that east of track No. 6 there was a ditch some fourteen or fifteen inches deep, with holes in it at places, and at about the place of the accident it had a wooden beam or cross-tie, which crossed it from the railway tracks to a tool or switch shanty which was some five or six feet east of the track, but the evidence clearly establishes that any one could walk along this ditch or in the open space east of it and next to the fence, without difficulty.

Appellee was thoroughly familiar with the fact that a large number of trains, about 200 per day, came into and passed out of appellant's depot, and he says it was his business, as foreman of the gang, to keep the men out of the way of the trains.    The time of the accident was a busy part of the day, and some of the witnesses say that trains passed the point of the accident as often as every two or three minutes.    Appellee himself says that they went by about every five minutes, and that every fourth or fifth train each morning "kicked" its cars back from Randolph street on tracks 3 and 4; that they generally filled track 4, and they were then thrown down on track 3. Appellee was ordered by his immediate foreman and superior, Galvin, to take his men and raise track No. 4, and because appellee could not work to advantage by reason of the fact that the trains were being put in on track 4, Galvin ordered appellee to see Murphy, who was the passenger yard master, and have Murphy put the cars on track No. 3. To carry out Galvin's order, appellee took one of appellant's north-bound suburban trains, composed of an engine and

four cars, at a point somewhere south of Randolph street, probably Van Buren or Twelfth street, and rode to the station between Lake and Randolph streets, where he got off on the station platform and started to the south between tracks 3 and 4, to speak to Murphy, who, he says, was on the west side of what is called the switch leading onto tracks numbers 1 and 2, where tracks 1 and 2 come together. He says there was only one track west of where Murphy was standing; also that he saw Murphy at this point, as the train on which he rode passed as it went to the north. This train went north on track No. 4, and appellee knew that as soon as it had discharged its passengers it would be backed or shunted south and into the railroad yards, in the direction that appellee was going. Appellee says that he proceeded south between tracks 3 and 4, and when he had walked about seventy-five or eighty feet he looked back, but saw nothing coming then, and crossed over and walked south between tracks 4 and 5 to a switch right south of Randolph street viaduct. He says that at this point there was a switch shanty and a cross-over track, where trains coming from one direction or another were liable to cross; that from about this point he walked on the ties of the east side track No. 6 about seventy-five feet, and when about 150 feet south of the depot he was struck near the junction of tracks Nos. 4 and 6. He also says that the first he knew of the approach of the train he "thought he felt a little sound and turned, and the coach was right on me about two feet away. It struck me on the front of my head, over the eyes." He also says that there was a ditch to the east of this track about fourteen or fifteen inches deep, and he could have walked there, but to some disadvantage. "I could have walked between track No. 1 and the stone wall. It was only about thirty feet away. I was trying to take the near cut."

He also says that he did not see the train until it hit him.

In view of the foregoing evidence—appellee being entirely familiar with the danger to which he was exposed from passing trains by walking along the tracks, there being two

other ways, viz., the open space east of the track on which he was walking, and the open space to the west of track No. 1, which he says was thirty feet away from where he was walking, by which he might have safely and conveniently reached the place where Murphy was standing, there being only one track to the west of Murphy—he was guilty of negligence which was the direct contributing cause of his injury, and by reason thereof, is not entitled to recover in this case. We think appellee was so clearly negligent in walking where he did, that there should be no difference of opinion among reasonable and fair-minded persons. And in this connection we think it should be said that whether he looked or not, is not of controlling importance, for the reason that his negligence in walking on the tracks at all, under the circumstances shown, precludes a recovery. It follows that the learned trial judge was in error in not instructing the jury to find the defendant not guilty. Wharton on Negligence, Sec. 199 and 244; 7th Am. & Eng. Ency. Law (2d Ed.), 424, and cases cited; Penn. Co. v. Lynch, 90 Ill. 333-7; Simmons v. R. R. Co., 110 Ill. 340-6; R. R. Co. v. Lonergan, 118 Ill. 48; R. R. Co. v. Bliss, 6 Brad. 411-18; Armour v. McFadden, 9 Brad. 508-14; R. R. Co. v. Batson, 81 Ill. App. 142-54; Ruane v. Ry. Co., 64 Ill. App. 359; Austin v. R. R. Co., 91 Ill. 35; Stobba v. Fitzsimmons, 58 Ill. App. 428; R. R. Co. v. Stassen, 56 Ill. App. 221; R. R. Co. v. Roy, 5 Brad. 88.

In the Bliss case, *supra*, where a track man was killed, when he might easily and certainly have escaped injury by three different courses of conduct from the one he did pursue, this court held that he was guilty of contributory negligence which precluded a recovery. The court say :

" When a party, perceiving, or having the means of perceiving by the use of ordinary care, that danger is imminent upon a certain line of conduct, nevertheless pursues it for the advantage supposed to be offered thereby, declining another which he sees to be certainly safe, in the belief that he will be able to escape, and is overtaken by it, he is chargeable with a want of ordinary care, and must suffer the consequences to which he has thus contributed." (Citing

R. R. Co. v. Jacobs, 63 Ill. 180; R. R. Co. v. Jones, 76 Ill. 317; and R. R. Co. v. Sunderland, 2 Brad. 307.) All these cases sustain the ruling of the court.

In the Ruane case, *supra*, in which a flagman at a railroad crossing, whose duty it was to watch for trains and to give signals was injured, this court held that there could be no recovery for an injury to him by a train which it was his duty to see and signal as it approached the crossing. The court say : " There is nothing tending to show that it was necessary for him to stand upon the track, or so near it that he would be struck by a passing train." So in the case at bar there is nothing to show that it was necessary for appellee to walk upon the ties so near to track 6 that he was liable to be struck by any passing train, and it was his duty not only to look out for his own safety, but that of the men under his charge. We are unable to reach any other conclusion, under the evidence, than that appellee was injured only because of a careless and reckless disregard for his own safety, when he was entirely familiar with the peril which he incurred by his needless and negligent act.

The judgment is reversed.