**Thomas S. Crowe, Administrator, Appellee, v. Northwestern Malt & Grain Company, Appellant.**

**Gen. No. 16,957.**

1. MASTER AND SERVANT—*averment of due care.* In an action by an employe for injuries sustained through negligence of the employer, it is necessary to aver in the declaration that the employe at the time of the accident was in the exercise of due care and caution for his own safety.

2. MASTER AND SERVANT—*proof of due care by habits.* Where there are no eyewitnesses to an accident to a servant resulting in death, due care and caution may be proved by evidence that the habits of the deceased, as to carefulness and caution, were those of a careful man.

3. MASTER AND SERVANT—*when evidence of due care is not sufficient.* In the absence of eyewitnesses in attempting to prove that a servant killed in an accident was a careful man, a witness testified that as far as he observed the deceased appeared to be careful, but it did not appear that the witness had had opportunities of acquiring knowledge. Two witnesses gave positive testimony that

the habits of the deceased were careless. *Held*, there was no justification for a finding the deceased was habitually prudent, cautious and temperate.

4. MASTER AND SERVANT—*choosing a dangerous instead of a safe route.* A malting company habitually moved empty grain cars by bumping loaded cars against them. A servant permissively going on errands for fellow-servants was familiar with the situation and was ordered not to use the route he did. In using this route he was crushed between an empty car, that he must have known was empty, and a loaded car. There was no eyewitness, no evidence that he was known to be in danger and evidence as to his habits of care was conflicting. *Held*, he was guilty of contributory negligence as a matter of law.

5. MASTER AND SERVANT—*absence of negligence by master where servant voluntarily chose a dangerous route.* A malting company habitually moved empty grain cars by bumping loaded cars against them. A servant permissively going on errands for fellow-servants was familiar with the situation and was ordered not to use the route he did. In using this route he was crushed between an empty car, that he must have known was empty, and a loaded car. There was no eyewitness, no evidence that he was known to be in danger, and evidence as to his habits of care was conflicting. *Held*, the master, as a matter of law, was not negligent.

6. MASTER AND SERVANT—*contributory negligence as the proximate cause as a defense.* Where a servant permissively going on errands for fellow-servants is crushed between railroad cars used by his master, the servant acting at the time in disregard of an order not to use such dangerous route, that the order was habitually disregarded will not preclude his contributory negligence from being the proximate cause of his death, and such negligence may be availed of as a defense.

Appeal from the Circuit Court of Cook county; the Hon. H. STERLING POMEROY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed with a finding of facts. Opinion filed June 4, 1912.

H. B. BALE and ROBERT J. FOLONIE, for appellant.

EDMUND S. CUMMINGS, for appellee.

Mr. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

This is an action brought in the Circuit Court of Cook county to recover for the death of plaintiff's in-

testate, as a result of injuries received through the alleged negligence of appellant, on its premises February 2, 1909. A jury trial resulted in a verdict, and judgment against appellant for $1,768.

The plant of the appellant consisted of a malt house on the east side of which there were two switch tracks extending north and south just outside of the building. There was a door on the east side of the malt house and a person walking in an easterly direction on leaving this east door would first come to the unloading track or barley track, as it was called, on which there was a track scale. The south end of the track scale was about eighty feet to the north from this east door. Next beyond this barley track was another track variously designated. Just east of this last track, and nearly opposite the north end of the premises, was a scale shanty where the weighman had his station, and was accustomed to weigh loaded cars which came upon the scale. After the car was unloaded, the boards which held the grain in the car continued to be left on the scale until the weighman had finished weighing the empty car with the boards, when they were then removed from the scale and a new car loaded with grain pulled up on the scale to be weighed and unloaded. To move the empty car off the scale the loaded car was bumped against it. The power to move the loaded car (which came from the north) was furnished by a rope with a hook upon the end fastened to the trucks of the loaded car, the other end of the rope being attached to a spool on a car-pulling machine operated by a stationary engine contained just inside the walls of the malt house. At the time of the accident five cars had already been emptied and pushed south on the track scale, the nearest end of the last one of which was only about a foot or so away from the south end of the car standing upon the scale. Immediately east of these two tracks was the Chicago & Northwestern Railway Company's right-of-way, which, at this point, is elevated. It appears that when

the men, who lived east of the North Western Railway tracks, came to work in the morning, and when they left for home in the evening, and also when they went to and from lunch at the noon hour, they placed a stepladder against the wall retaining the embankment and crossed the right-of-way. As the car-pulling was done only during working hours, the car-puller was not, as a rule, in operation when the employes were thus crossing the tracks.

The deceased had been employed in the malt house for seven or eight years, and his eyesight and hearing were said to be good. For a considerable time before the accident, deceased had been accustomed to go each day, at about the hour of ten o'clock in the forenoon, to procure pails of beer for his fellow-employes in the plant, he having been designated for that service by his foreman because his absence upon that errand interfered less with the work than to have the beer procured otherwise. The saloon, from which the beer was procured, is located in a northwesterly direction from appellant's plant. In going for beer on the day in question, the deceased went through the east door of the malt house, crossed the two switch tracks, then walked north beyond the scale and turned west where he again crossed the tracks on his way to the saloon. In coming back, he followed the same general course, and, going eastward, crossed the tracks just north of the scale, then went south, and after passing the scale, he was not again seen until after the accident—which must have occurred about half a minute later. He had a string of beer cans attached to a stick in each hand; these were found immediately after the accident on the barley track, just south of the scale, and he was seen leaning against the malt house nearby, having been apparently crushed between the car, which stood upon the scale, and which had just been emptied, and another empty car situated only about a foot or so south of it, as he attempted to pass between them with his cans of beer.

In appellant's plant, beside the "east" door through which deceased passed, there was also a door on the west side of the plant, toward the southerly end of the malt house, which was open at all times, during working hours, and it appears from the evidence that the deceased sometimes used this "west" door. The distance which deceased had to travel to reach the saloon, if he went out at the "west" door, was practically 1,500 feet; while, if he went out at the "east" door, the distance to the saloon was about fifty feet less. However, if he went by way of the "west" door, the way was entirely unobstructed by building or car tracks, while by going out the "east" door, he was compelled to cross the two tracks lying next the building in going east, then crossing them again as he went west to the saloon, and, in returning, he was compelled to recross the same tracks twice to get back into the building.

It further appears in evidence that about a week before the accident occurred, the foreman for appellant told deceased not to use the "east" door in getting beer; that there was danger in using it and crossing the tracks, and he peremptorily ordered deceased to use the "west" door, which he promised to do. After this instruction was given, the foreman had no knowledge as to whether or not he was obeyed. But the evidence fairly shows that during the several years prior to the accident, the route by way of the "east" door was much more frequently used.

The negligence alleged was that appellant carelessly moved and operated the car in question, and caused it to strike the deceased without giving any notice or warning of its intention to do so, and without any control over the brakes or speed of the car.

More than a year after the declaration was filed, by leave of court, an additional count was filed setting up much more of detail concerning plaintiff's alleged cause of action. Appellant filed a plea of the statute of limitations to this additional count, to which

plea the court sustained a demurrer, and appellant elected to stand by its plea.

We are asked to reverse the judgment, upon the contentions that none of the original counts of the declaration state a cause of action; that the court below erred in sustaining the demurrer to the plea of the statute of limitations to the additional count; that the court erred in not directing a verdict for the defendant, and in denying its motion for a new trial; and that the court also erred in its rulings upon evidence, and in giving and refusing instructions.

After a careful examination of the briefs and arguments, together with all the evidence shown in the record, we have reached the conclusion that the judgment of the court below must be reversed.

It is very doubtful whether upon the evidence in the case negligence of the defendant is established. The record nowhere shows that the employes of appellant knew at the time the empty car was moved from the scale that McLaughlin was in a position of danger. Appellant would be under no obligation to give warning or make signals when it was about to move the car off the scale, if there was no one on or near the tracks, and it does not anywhere appear that the presence of McLaughlin between the end of the recently emptied car upon the scale and the car south, was known to, or even suspected by, any of the employes of the defendant company. The most that can be said is that he had been seen shortly before that, and was then, east of the emptied car going south, but whether he had, at any point, stopped, or whether he had reached a point where he wished to cross the tracks between the cars, or whether he was engaged in the slightly longer trip of going far enough south to go around south of the four or five cars standing upon the track, does not appear.

The specific charge in the declaration was that plaintiff's intestate was carrying beer on the occasion

in question "for certain servants of the defendant, employed by it at its plant aforesaid." It is not even averred that this was being done for the defendant, nor that while so engaged he was furthering or promoting the defendant's business; nor yet, that the discharge of his duties to his employer *required* him to be upon the track where he was injured. In Gibson v. Sziepienski, 37 Ill. App. 601, it appeared that the deceased was taking dinner to his son, who was working in the factory of defendant. It is alleged that the deceased was there with permission of the defendant, and it might have been claimed in that case (as it is suggested in this) that thereby he was promoting or furthering the business of defendant by bringing lunch (as well as in this case, by bringing the beer to the workmen). But the court said: "There was no duty of defendant to safeguard its plant for plaintiff's intestate, * * * As to persons in the building, (in this case, on the tracks) by permission of the proprietors, the law does not impose upon them the duty of guarding such dangerous objects, so that visitors shall receive no harm."

We are clear, however, that the record does show the deceased to have been guilty of contributory negligence proximately contributing to the injury, and that he assumed the risk of the dangers which resulted in such injury.

It was incumbent upon appellee to establish his case before the jury by competent testimony, and a necessary averment of the declaration was that the deceased was, at the time, in the exercise of due care and caution for his own safety. There was no direct testimony upon this point. Plaintiff sought to sustain this averment, however, by proof that the habits of the deceased, as to carefulness and caution, were those of a careful man. Such testimony is admissible where, as in this case, there were no eyewitnesses to the accident. The only testimony submitted to the jury by the appellee upon this question was that of

a single witness, whose testimony upon this point only went to the extent of saying, "So far as I observed, Henry McLaughlin appeared to be careful as much as I know." It does not appear that the witness had noticed any instances of McLaughlin's carefulness, nor was it shown what opportunities witness had for observing him about his work, nor that witness ever observed the general conduct of deceased with reference to his own safety. Opposed to this very meager testimony upon this point, was the testimony of two witnesses for appellant, one of whom says that "McLaughlin's habits before the time of his death, respecting his own safety, were careless." And upon cross-examination, he explained that McLaughlin had previously had his hand hurt by getting it in running machinery; the witness further said, "I say that he was careless as to his own safety around machinery." Another witness testifying on behalf of the defendant upon this point, says: "I observed McLaughlin's habits in respect to his own safety. His habits in this respect were careless. Whenever I fixed a machine he was always around there, and I had to take care of him more than myself to keep him away from the machinery."

The material question here was as to the *habits* of the deceased, and, under the law, it was necessary that there be some evidence on the part of appellee to raise a presumption that the deceased "was habitually prudent, cautious and temperate." C. R. I. & P. Ry. Co. v. Clark, 108 Ill. 117. We think it is evident, from the proofs in this case, that there is no justification for finding that the deceased "was habitually prudent, cautious and temperate."

Upon the facts shown in this record, it is indisputable that, upon his trips to procure the pails of beer, deceased was at liberty to use the west door of the malt house, and that, had he chosen that route, he would have been entirely free from any risk involved

in crossing the tracks, whether between the cars or not; but he chose to use the east door, crossing these two tracks twice on his way to go to the saloon, and twice when returning therefrom, carrying on sticks in his hands sixteen small cans or pails of beer, and attempting to pass through between cars so close together as to leave a passageway for him between them of only a foot or two. The physical conditions creating the hazard, which he thus voluntarily incurred, were perfectly apparent. His eyesight and hearing were good. He was thoroughly familiar with the situation. Within approximately half a minute to a minute before he was injured, he passed along the east side of the car standing upon the scale, between which and the empty car just south there was only this space of a foot or two, and attempted to pass through between them, burdened as he was. To one giving the slightest attention, it was perfectly apparent that the car was likely to be moved at any moment. When deceased was going eastward to cross the tracks north of the scale with his cans of beer, the rope with the hook for pulling up the loaded car had already been drawn out north to be attached to the loaded car, and, immediately after he passed, the hook was actually attached and the car started. It was apparent from even a casual inspection of the surroundings, including the car upon the scale, that it had been emptied and swept, and that the boards on the scale were nearly all picked up, showing that the car was likely to be moved at any instant. Taking this east route, with its crossing and recrossing of the tracks in question under the circumstances shown in this record, we consider evidence of lack of due care. The distance to the saloon, by using the east door and crossing the tracks, is about 1,500 feet, and, by the west door, the distance to be traveled is about 1,550 feet over prairie land, with a passageway wholly unobstructed by car tracks or buildings. The small saving of about 50 feet in dis-

tance (being about one-thirtieth of the total distance to be traveled), by choosing the east route with the danger and delay incident to crossing the tracks, was certainly an inadequate reason for any prudent man. Having thus, by his own choice, selected a dangerous route, when he was at liberty to follow a safe one, he was guilty of negligence. Kath v. Ry. Co., 232 Ill. 126; Elgin, Joliet & Eastern Ry. Co. v. Docherty, 66 Ill. App. 17. In the former case the court said on page 134:

"Suffice it to say that where there are two ways of performing an act, one of which is safe and the other negligent, and the servant without coercion, pursues the negligent one, there can be no recovery, if in performing the act he is injured. It has often been held that a master is not bound to take more care of the servant than the servant may reasonably be expected to take of himself."

In the latter case plaintiff's intestate was a switchman in the employ of defendant. In attempting to board a car he stepped upon a swing brake beam, and seized an upright brake staff, intending to draw himself up; its fastenings were defective—it gave away, and he fell under the train. There were steps on the side of the car, which he could have used. The court said:

"From the evidence in this case there can be no question that the *deceased chose a dangerous instead of a safe means* of attempting to board the car, and that his death was the result of such voluntary choice. Under such state of facts, the authorities are full and complete that there can be no recovery."

By a rule of the company employes were forbidden to stand on the track while boarding engines or cars, and the plaintiff introduced evidence that it was "*customary for men to board cars in this manner*," and "it is claimed the custom was so well established that deceased had a right to assume that the rule had been

abrogated, because it had not been observed or enforced.''

The court, in passing upon this contention, on page 23, says:

''Under the view we take of this case, we do not deem it. necessary to discuss the propriety of the court's action in admitting this evidence.  The deceased appeared to be a man of ordinary intelligence, and was the master of his own actions. *Aside from any rules, the highest duty he owed to himself, and one of the duties which was due from him to his employers was to avoid risk and danger.*  It was incumbent upon him, whether there was any rule upon the subject or not, to have selected the safe method of trying to mount the car, and thereby avoid the unnecessary risk and hazard to which he exposed himself by the course he pursued.''

The court then held that plaintiff's intestate had been guilty of contributory negligence.

In Illinois Central R. R. Co. v. Curran, 94 Ill. App. 182, the plaintiff was a track foreman.  He walked along the ties of the tracks when there was an open space on each side of it which he could have used; the court said:

''We think appellee was so clearly negligent in walking where he did that there should be no difference of opinion among reasonable and fair-minded persons, and in this connection we think it should be said that whether he looked or not is not of controlling importance for the reason that his negligence in walking on the tracks at all, under the circumstances shown precludes a recovery.''  ''It follows that the learned judge was in error in not instructing the jury to find the defendant not guilty.''

Upon the trial of the case at bar, McLaughlin's foreman, Thomas Brockwell, was a witness.  He was called in the first instance by appellee, and afterwards on behalf of appellant, and he testified that he had in-

structed the deceased to use the west door. He says: "About a week or ten days before he was killed, I had a conversation with McLaughlin. I went to see what kept him from coming with the beer. He came late, and I said, 'What kept you with the beer?' He said, 'I was detained by the cars.' I said, 'Where were you?' He said, 'I was over at Peterson's.' I said, 'Why don't you go in the west door?' He says, 'The other way is shorter.' I said, 'Shorter nothing—there is not enough to make any difference.' I says, 'You go in the west door and there is nothing in your way— you have a clear road.' 'Well,' he says, 'I have always come that way,' and I said, 'From this on don't go that way any more, because,' I says, 'You are liable to get hurt. We don't want you to be detained all day for the beer and keep the men from working,' and, I says, 'So, from this on, you go the other way,' and he says, 'All right, sir.' From that time on I didn't see what way he went. McLaughlin's habits before the time of his death, respecting his own safety, were careless. The door at the west end of the malt kilns was always opened, and unlocked during working hours."

This testimony was unimpeached, and we do not see that it can be discredited upon the ground that it was unreasonable or improbable. Under the circumstances shown in this record we do not think that the jury were at liberty to disregard the testimony of Brockwell. See Kauffmann v. Johns-Manville Co., 156 Ill. App. 426. If it is true, it established a defense.

Some contention is made here that the defense of contributory negligence is not available, because it is said that the crossing of the tracks by McLaughlin was not the proximate cause of his injury, and that, in any event, if such an order was given, it was habitually disregarded by McLaughlin. We do not think the contention sound. In Abend v. Railroad Co., 111 Ill. 209, the court said:

Crowe v. Northwestern Malt & Grain Co., 171 Ill. App. 285.

"It cannot be maintained as a general proposition that in actions for personal injuries caused by the defendant's negligence, the contributory negligence of the injured party will constitute no defense except where the latter's negligence is an element or factor in producing the force, causing the injury complained of. It is sufficient, if the plaintiff's negligence materially contributes to the *injury,* whether it contributes to the *force* causing the injury or not.   *   *.   *   Mere inconvenience in performing a duty or a few minutes more time in performing it, by reason of the operation of the rule, is not sufficient to relieve an employe from the legal consequence of violating the rule."

In Chicago & Alton R. R. Co. v. Myers, 95 Ill. App. 578, plaintiff, a brakeman, sought to recover for injuries received while attempting to uncouple a car. The case turned upon the question of contributory negligence. He had been instructed to not go between moving cars. The court said:

"An employe cannot recover for injuries received while acting in violation of his contract of employment and reasonable rules established for his safety,"—and the court held that evidence of customary violation of the rule prior to the time it was imposed upon the plaintiff was not competent.

We therefore conclude that the appellant was not shown to be guilty of actionable negligence, and, also, that the deceased was not at the time in the exercise of ordinary care for his own safety, but was guilty of contributory negligence, and these conclusions render unnecessary a discussion of the other questions involved upon this appeal. The judgment of the court below must be reversed.

*Judgment reversed with a finding of facts.*