Bertha Hines, Administratrix of the Estate of Joseph G. Hines, Deceased, Appellee, v. Pennsylvania Railroad Company, Appellant.

Opinion filed October 31, 1929.

WHITNEL & BROWNING, for appellant.

BEASLEY & ZULLEY, for appellee.

Mr. Justice Newhall delivered the opinion of the court.

This is an appeal from the city court of East St. Louis to reverse a judgment for $20,000 in favor of appellee in an action brought by her under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.,* for damages on account of the death of appellee's husband, Joseph G. Hines, while alleged to have been on duty as an employee of appellant. The declaration alleges that while appellee's intestate was working for appellant, engaged in interstate commerce, the latter, through its servants, "without any knowledge or warning to the plaintiff's intestate . . . carelessly, negligently and improperly drove" an engine over and thereby caused the death of appellee's intestate.

The tracks of the Pennsylvania Railroad Company run in an easterly direction out of East St. Louis and the relay depot, the terminal point of its passenger trains in East St. Louis, is several miles westerly from the point where the railroad crosses Ninth Street, from which crossing the road extends to the east. At Ninth Street the railroad consists of two main tracks and three side tracks which cross Ninth Street at an angle.

At and prior to May 25, 1927, appellant maintained watchmen or flagmen at this crossing who worked in shifts of 8 hours each. The deceased's, Joseph G. Hines, regular shift as flagman or watchman was from 7:00 a. m. to 3:00 p. m. daily.

On May 25, 1927, Hines worked his regular shift until 3:00 p. m. when he was relieved by another watchman by the name of Marshall. At about 10:45 p. m. on the night in question Wiggins, whose time of duty as watchman began at 11:00 p. m., appeared at the crossing and within a few minutes thereafter Marshall, who had been on duty as a watchman, left. Marshall testified that although Wiggins ordinarily relieved him, on

the evening in question he turned the crossing over to Hines, who took a white lantern out of Wiggins' hand and proceeded to flag traffic at the crossing.

It is contended by appellee that by an agreement made pursuant to a custom Wiggins had traded shifts with Hines and arranged with Hines to substitute for him on the night in question from 11:00 p. m. to 7:00 a. m. and to support this theory appellee offered evidence by Wiggins who testified that he had been told by the foreman that in the event he was sick he should arrange with some other watchman to take his place.

On the part of appellant it is contended that the evidence shows that Wiggins was not sick on the evening in question and that he did not request Hines to take his place, and that Hines in going to the crossing in question and in assuming to work as flagman or watchman on the midnight shift was a mere volunteer.

Shortly after 11:00 p. m. a long freight train, commonly known as a drag, moved westerly over the crossing on one of the passing or switch tracks. At this time Hines was on the crossing with his white lantern protecting automobile traffic. The freight train stopped for a short time on the crossing and considerable numbers of automobiles collected on both sides of the tracks waiting for a clearance. It appears that Hines stood between the rails of the second track and was facing the passing freight train, and while so doing an engine was running backwards from the relay depot towards the crossing. The engineer and fireman testified that the automatic bell on the engine was ringing, and had been from the time the engine left the relay depot; that lights were burning on the back of the engine and that the usual crossing whistle was given as the engine approached. Wiggins, who was also on duty as a watchman at the time in question, testified on behalf of appellant that he saw the engine and heard the whistle; that when the engine was about 40 feet away he tried

to warn Hines, who, on account of the noise of the passing train, evidently did not hear the warning. Two witnesses, Clark and Ostendorf, who were in an automobile on the opposite side of the tracks, testified that they heard the whistle and the bell and that they could see the top of the engine over the intervening cars at least a block away. Crain, who was in an automobile which Hines had stopped and ordered to back from the crossing, testified that he saw the engine when it was a hundred feet away and heard the bell and whistle and that at the time he also shouted a warning to Hines. The witness Marshall testified that he had left the crossing about fifteen minutes before 11:00 p. m. and proceeded to his automobile which was parked about 250 feet away where he remained for about three-quarters of an hour; that he did not hear a bell or whistle on any locomotive on appellant's road. The record shows that the foreman of the watchmen had instructed them that when two watchmen were on duty one should stand on the south side of the tracks and the other on the north side of the tracks in order to avoid the possibility of injury from passing trains.

The engineer on the engine of appellant, which caused the death of appellee's intestate, testified that as he approached the crossing he whistled; that the automatic bell was ringing; that he approached the crossing at from 6 to 10 miles an hour and he noticed that there was a white lantern swinging at the crossing which he knew as an engineer was the crossing watchman's light; that he saw this white light until he was about 50 feet from the crossing when the light disappeared from view on account of the back part of the tender being between the engineer and the swinging light on the crossing; that he assumed that the man holding the light had stepped from the track and out of danger. The engine proceeded to the crossing and Hines, not heeding the warnings that had been given

him by others, evidently did not see or hear the approaching engine and was struck and killed as he stood between the rails of the main track.

Appellant contends that the verdict was against the evidence, there being no competent evidence to support a finding that Hines was on duty at the time of the accident; that the evidence establishes that appellant was not guilty of the negligence charged in the declaration; that the risk of this particular accident was assumed by Hines, his own negligence being the alleged proximate cause thereof; and that the court erred in the giving and refusing of instructions.

Motion for a directed verdict was made by appellant at the close of appellee's evidence and renewed at the close of all the evidence, which was overruled and error has been assigned on such rulings.

It is admitted by counsel for appellee in their brief that the evidence shows the usual crossing signals had been given prior to the time that the engine proceeded upon the crossing where the deceased was engaged in flagman duties.

It is also contended by appellee that her declaration does not base a right of action upon the statutes of Illinois with reference to blowing a whistle, or sounding a bell on approaching a public highway but it is claimed that the evidence establishes that the engineer on the engine saw appellee's intestate in a place of danger and made no effort to warn appellee's intestate as alleged in her declaration.

The declaration alleges that the servants in charge of the engine, without any knowledge or warning to appellee's intestate, negligently drove the engine backwards over the crossing and as a result of such negligence appellee's intestate was killed.

The principal inquiry is whether under the evidence most favorable to appellee there is shown any failure of appellant's servants, the trainmen, to perform any

duty owed appellee's intestate; whether, under ordinary circumstances, a railroad company owes a duty to its flagmen or watchmen employed at public crossings to protect the travelers thereon, to warn them of the approach of trains that are running in the usual and ordinary manner in the conduct of railroad traffic.

In the case of *Toledo, St. L. & W. R. Co. v. Cross,* 127 Ill. App. 204, a flagman, who had been stationed near a trestle over the railroad property for the purpose of warning trainmen in case that high water in a creek underneath the trestle endangered the same, was killed by a passing train and it was alleged that the trainmen failed to warn the flagman of its approach. A right of recovery in the case was predicated solely on the alleged failure of the trainmen to sound a locomotive whistle as a warning to the watchman or flagman before passing over the trestle. The court held in this case that the railroad company owed no duty to the deceased to sound a whistle or give other warning of the approach of its trains. In passing on this issue the court said, "The deceased was stationed at the place in question in the capacity of a watchman, to keep a lookout that the waters of the creek did not wash away the fill or embankment so as to endanger the foundations of the trestle, and to display, as occasion required, signals of danger or safety for the information of the servants of appellant operating its trains. He was an experienced railroad man, familiar with appellant's road and must be held to have known that appellant's trains were liable to pass over its track at any time. He was stationed there for the express purpose of watching for the approach of trains and signaling them. It is anomalous to say that appellant, under such circumstances, owed the deceased a duty to warn him of approaching danger."

In *Doering v. Peoria & P. U. Ry. Co.,* 196 Ill. App. 129, the court had under consideration the case of an

injury of a crossing flagman on the public highway who was struck by a railway train crossing the same and it was urged that the railroad company failed to warn the flagman of the timely approach of the train. The court held that the flagman owed his employers the duty to ascertain the approach to the crossing of all trains and engines and to give timely warning and signals to stop all foot passengers and to the drivers of all vehicles that a train or an engine was approaching. And it was further held by the court in this case, "This is not the case of a servant of a railway company upon and about the tracks to perform some other duty and with a right to rely upon the railway company to give all statutory and customary signals while he is performing that other duty. This was one of the servants of the railway company whose duty it was to ascertain the approach of the train and give signals therefor. He entirely failed to perform that duty. The train was in sight for four blocks. He could not fail to see it if he looked, for the weather was clear and the time was midday. Under these circumstances the fact that he did not see it proves conclusively that he did not properly look in that direction. It has been held that under such circumstances a person upon whom such a duty rested cannot recover for an injury to himself which he would not have received if he had performed his duty. *Ruane v. Lake Shore & M. S. Ry. Co.,* 64 Ill. App. 359; *Loettker v. Chicago City Ry. Co.,* 150 Ill. App. 69; *Shea v. Chicago & O. P. El. R. Co.,* 183 Ill. App. 380."

The undisputed facts in the case at bar show that as the engineer approached the crossing in question, he observed a white light was being swung presumably by a flagman at or near the crossing, and under such circumstances he had the right to act upon the assumption that the flagman would perform his duty and step out of danger of the approaching engine, there being

nothing to indicate to the engineer that the flagman was trapped or was oblivious to the danger. See *Aerkfetz v. Humphreys*, 145 U. S. 418, 36 L. Ed. 758.

In *Toledo, St. L. & W. R. Co. v. Allen*, 276 U. S. 165, 72 L. Ed. 513, it was held that an injured employee cannot hold his employer liable under the Federal Employers' Liability Act for injuries received in the course of his employment in the absence of negligence on the part of the employer.

It was further held in this case that employees engaged in switching cars in a railroad yard, are not, in the absence of knowledge that a car checker is in a place where he is liable to be struck by the movement of the cars, and oblivious of that danger, required to vary the switching practice customarily followed in the yard, or warn, or take other steps to protect him.

There is no evidence tending to show that appellee's intestate was in any danger other than such as was usually incident to his employment or that any member of the engine crew knew or had any reason to believe that he was oblivious of surrounding conditions.

We are of the opinion that there is no evidence to sustain the allegations of appellee's declaration and that appellant owed no duty to the deceased to give him warning of the approach of its trains.

In the view we have taken of this case, we deem it unnecessary to discuss the other questions argued by counsel.

The judgment of the city court of East St. Louis is reversed with findings of fact to be incorporated in the judgment of this court.

*Reversed with findings of fact.*

Findings of fact: We find that appellant was not guilty of any negligence charged in the declaration.